Chief Justice Robertson
delivered the Opinion of the Court.
Emaline, an infant girl of color, by her next friend, sued Jameson, in an action of trespass and false imprisonment in detaining her as a slave, and the Circuit Court, on the trial on an appropriate issue, having instructed the jury that she had a right to recover, verdict and judgment were accordingly rendered in her favor.
It appears that she is a daughter of Nancy, who was a child of Maria, whom her mistress, Mrs. Levy, emancipated, by an instrument of writing, signed and sealed by herself and by Evan Gwynn, purporting to be a bill of sale of “the possession” of Maria to Gwynn, for the term of fifteen years; and declaring that, at the expiration of that term, she “ shall be and is hereby manumitted, set free “ and discharged from all claim of service and right of “property whatsoever;” and also stipulating and declaring that, if she should have “ issue at any time or times “ during the said fifteen years, they and each of them “shall be manumitted and set free when they shall re- “ spectively arrive at the age of thirty years.” It appears, also, that Nancy was bom between the date of that document and the expiration of the prescribed term of fifteen *208 years, and that Emaline was born before Nancy had attained thirty years of age.
Whether these facts, admitted on the trial, proved that Emaline was a free person, or a slave, was altogether a question of law; and therefore, if the legal deduction from them be that she is free, the peremptory instruction to that effect was proper, and the verdict and judgment were right; otherwise the instruction was wrong, and therefore the judgment was erroneous.
It is, we think, sufficiently clear that, according to any allowable or consistent interpretation of the foregoing writing, Maria continued to be a slave until the expiration of the term for which she had been sold to Gwynn. “ Shall be and is hereby manumitted, &c.,” would, alone, necessarily import that her liberation was coeval with the execution of the writing, and that her services only were reserved and transferred to Gwynn, for a term of fifteen years; and that, therefore, the “possession” of her for that length of time was designated as the subject matter of the transfer.
But these considerations are overruled by others:
First. The writing provided that “Maria shall be and is hereby manumitted, set free, and discharged from all claim of service and right of properly” — at the end of the fifteen years; and therefore, it is manifest that the right of property was not surrendered during the fifteen year’s, and that the manumission was postponed to the end of that time.
Second. The stipulation respecting the freedom of Maria’s children, who should be born during the fifteen years, tends to show that the parties did not understand that she was a free woman from the date of the writing; because, if she had been then free, there was not only no necessity for the provision for the liberation of her subsequent children, but such a stipulation would have been absurd and superfluous; for it was not in the power of the parties to make either slaves or servants, for thirty years, or for an instant, of her children born when she herself was free.
As Maria was a slave when Nancy was born, the offspring was also a slave, unless the written memorial of *209 the mother’s prospective liberation should be construed as intended to provide for her future children’s liberty from their birth, or unless partus sequitur ventrem should be deemed inapplicable to the issue of a female slave entitled to freedom in futuro. But this Court," and others where slavery has been recognised, have so often and authoritatively decided that, the condition, as to liberty or slavery, of the child shall be that of the mother at the birth, as to leave no judicial ground for debating the question here and at this day, whatever might be thought were it res nova now to be decided for the first time. And we cannot, consistently, with the plain import of the provision respecting the children of Maria, feel authorized to decide otherwise than that such of them as were born during the term of fifteen years next succeeding the date of the writing, were intended to be, and therefore were, slaves for thirty - years after their respective births. And therefore, as no provision was made respecting the grand children born whilst their mothers were slaves, we have no authority to supply the omission by speculating on the probable cause of it, or by presuming that the parties intended what they have not even intimated, and which (however inexplicable may be their silence,) is altogether inconsistent with the legal effect of that which they expressly declared.
What effect a jury might be permitted to give to the testimony respecting Wickware’s declaration, that Nancy and her children (then in his possession as his slaves, and prior to a sale of them to the appellant,) were free, and that therefore he would not pay any tax upon them, we shall not now intimate; for though they might have been liberated by himself or his vendor, and even though his conduct and declarations, as proved, might perhaps authorize the deduction that they had been emancipated, nevertheless, the Circuit Court errred in peremptorily instructing the jury to find for the appellee.
The Jury alone had a right to decide on the effect of the parol evidence.
And therefore, notwithstanding the peculiar nature of the subject in issue, and the fact that a verdict has been rendered in favor of liberty, the record, as now present *210 ed, forbids an affirmance of the judgment. This, like every other case, must be decided, by this Court, according to the law of the land applied to a rational and consistent interpretation and effect of the facts proved.
Judgment reversed, and cause remanded for a new trial.