CHANCERY.   **Johnson's Adm'r., &c. *vs* Johnson's Heirs.**

*Case* 116.          APPEAL FROM THE GARRARD CIRCUIT.

*Wills.   Remainders.   Devises.*

*June 15.*   JUDGE SIMPSON delivered the opinion of the Court.

Case stated.   THE will of Job Johnson, deceased, contains the following provisions, viz:

"I give unto Margaret Johnson, my beloved wife, the negro girl Lytha, to wait upon her as long as she lives, and in case of the death of my wife before Lytha arrives at the age of twenty one, her services shall be rendered as is hereinafter directed."

"If my wife dies before my negro girl Lytha arrives at the age of twenty one, she shall also be hired out, year by year, until she arrives at that age, and then she shall be free."

Margaret Johnson, the widow, lived a number of years after the death of the testator, and also after the negro girl Lytha had attained the age of twenty one, but is now dead. After the death of the testator, and before the death of the widow, Lytha had seven children. Those children form the subject of the present controversy; and the record presents the following questions:

Questions presented for decision.   1st. Is the negro woman, Lytha, entitled to her freedom under the will?

2d. Are the aforesaid seven children slaves, or are they free?

3d. If slaves, to whom do they belong? Are they the property of the representatives of Margaret Johnson, the widow, or of the representatives of the testator, Job Johnson, or do they belong to their mother?

An emancipation of a slave by will, may be contingent and to take effect upon the death of a particular person.   1st. It is evident the testator intended to liberate the girl Lytha. He seems to have contemplated the occurrence of the death of his wife, before Lytha arrived at the age of twenty one, and fixed that, and no other period, as the time when she was to be free. He, how-

JOHNSON'S AD'R. &c. *vs* JOHNSON'S H'RS.

ever, devised her to his wife for life; and her right to freedom was contingent. There was, in the intention of the testator, that Lytha should serve his wife during her life, nothing incompatible with the design he entertained, to emancipate her eventually. According to any reasonable construction of the will, Lytha was to be free at the death of the widow, unless her death occurred before she attained the age of twenty one, in which event she was to be hired out until she arrived at that age, and then she was to be free.

2d. Are Lytha's children, born during the life of the widow, free, or are they slaves? The doctrine is well settled by repeated adjudications, that the children follow the condition of the mother at the time of their birth: if she be then in a state of slavery, they are slaves, although she may be entitled to her freedom at a subsequent period : *Ned* vs *Beal*, (2 *Bibb*, 298;) *Jameson* vs *Emeline*, (5 *Dana*, 207.)

> A slave was by will, to be free at the death of a third person, or at 21 years of age if the person die sooner, the issue born of such slave before the right to freedom is perfect, are slaves; (5 *Dana*, 207.)

Where the testator actually emancipates the mother at the time of his death, and uses language clearly indicative of such an intention, and merely postpones the time of her full enjoyment of freedom to a future period, the issue born in the mean time, after the death of the testator, have been considered free. It was so held in the cases of *Charles* vs *French*, (6 *J. J. Marshall*, 331,) and *Hudgens* vs *Spencer*, (5 *Dana*, 589.)

> It is otherwise where the slaves are actually emancipated but the full enjoyment of freedom is postponed to a future period: (6 *J. J. Marshall*;) *Hudgens* vs *Spencer*, (5 *Dana*, 589.)

No such intention existed on the part of the testator in this case, nor is there any thing in the language of the will to bring it within the influence of the decisions referred to. Lytha continued in a state of slavery during the life of the widow. Her right to freedom under the will, was contingent. In no event was she to be free until she attained the age of twenty one; and not then, if the widow was still living. The children having been born when their mother was a slave, are themselves slaves, according to the maxim *partus sequiter ventrem*.

3. To whom do Lytha's children belong? The general rule is, that the offspring of such animals as are the legal subjects of property, belong to the temporary proprietor of the female at the time they are brought into

> The children born of a slave during the life time of a tenant for life, belong to those entitled

JOHNSON'S AD'R.
&C.
vs
JOHNSON'S H'RS.
to the remainder:
(1 Marsh. 532;
7 Monroe, 231.)

being. This rule was not adhered to by the Courts in reference to slaves, but the children born during a life estate in the mother, were held to belong to him in remainder or reversion, after the termination of the estate for life: *Murphey* vs *Riggs et al.* (1 *Marshall*, 532;) *Miller* vs *McClure*, (7 *Monroe*, 231.) The reason of the departure from the general rule, in the case of slaves was, it was thought to be more consistent with the feelings of humanity, that the children born during the tenancy for life, should go with the mother to the owner in remainder, after the particular estate had ended, than a separation should take place, by an adherence to the rule applicable to the natural increase of other property. They were therefore regarded as part of the reversionary interest, and returned to the grantor, or passed to the remainder man.

Where however no reversionary interest is retained, and the grantor, or personal representative or devisee of the testator is not entitled to the mother at the termination of the life estate, the reason for the exception not existing, the exception itself ceases, and the general principle must have its full operation. If a remainder has been created, to have effect after the termination of the particular estate, the children born during the continuance of the life estate go with the mother to the proprietor of the interest in remainder; where however, no remainder has been created, nor reversionary interest retained, but the absolute property in the mother is vested in the owner of the particular estate, at the expiration of which she is entitled to her freedom, the children born in the interval must belong to the person who was the proprietor of the particular interest when they were born, or to the mother, who being emancipated, claims to derive from the gratuity all the fruits and advantages ordinarily incident to the reversionary interest.

As the mother was a slave when the children were born, she was not in a condition to become vested with the title to them even in remainder. Besides the gift to her of her freedom, destroyed all right of property in her, except the life estate, if it continued until she

was twenty one years of age; so that after it ended, neither her nor any other person could claim her children, by virtue of the estate in remainder or reversion, as no such estate could or did exist. As the children could only be claimed by him in reversion or remainder as part of that interest, the conclusion is unavoidable, that where no such interest exists, there is no foundation for such claim to rest upon.

The right then to Lytha's children turns upon the effect that is to be given to the testator's will. If it vested the absolute property of the mother in Margaret Johnson during her life, without any qualification as to the right during that time, and gave Lytha her freedom upon the determination of the life estate, without any reservation, then the children must belong to the representatives of Margaret Johnson, deceased, inasmuch as no remainder was created nor reversionary interest retained.

By the will, the negro girl Lytha, is expressly given to Margaret Johnson as long as she lives. She is given to her for the purpose of waiting upon her; but that cannot restrict the operation of the gift, nor was it intended by the testator, that it should have such an effect. The language used by the testator is sufficiently comprehensive to vest the title to the slave in the devisee. The designation of the service to be rendered, was not intended as a limitation of the devise as it regards the right to the slave, but rather as an indication of the testator's great desire to promote the personal comfort of his wife, in her declining years, by leaving her, as expressed by himself, a slave to wait upon her. Lytha having attained the age of twenty one before the death of Margaret Johnson, was, under the will, entitled to her freedom immediately that [the life estate ended. There was no reversionary interest, and consequently the children could not be claimed in that right. No remainder being created, they could not go with the mother to the claimant in remainder. They must, therefore, belong to the estate of the tenant for life.

It is contended that these views are inconsistent with the principles settled in the case of *Young's adm'r.* vs

JOHNSON'S AD'R. &c.

RS

JOHNSON'S H'RS.

But if the slave be entitled to freedom upon the death of the tenant for life, then the issue born during the tenancy for life, belong to the representatives of the person holding the life estate.

*Small,* (4 *B. Monroe,* 220,) and the construction there
given to an instrument of writing, bearing a striking re-
semblance in its terms, to the provisions of the will in
question.

The doctrine, that a conveyance of the absolute prop-
erty in a female slave for a limited period, at the termi-
nation of which time, she is prospectively emancipated,
entitles the proprietor of the particular interest, to the
children born during the continuance of his estate, is
explicitly recognized in that case. But by the terms of
the writing there considered, the time, and services, and
control of the slave, were alone vested in the transferree
for a particular period, and the Court held that the ab-
solute right of property was not granted, even for the
time specified, but only a special property, a mere right
to the services of the mother, and that the children born
during that time, belonged to the original grantor.

'Case distinguish-
ed from the case
of *Young's adr.*
vs *Small,* (4 *B.
Monroe,* 220.)
Now there is a clear distinction between the cases in
reference to the interest conveyed to the owner of the
particular estate. In this case 'the absolute property of
the slave passed to the tenant for life. The slave herself
is given, not merely her time and services. Whether
the Court, in the case of *Young's adm'r* vs *Small,* in de-
ciding that a transfer of the time and services and pos-
session of a slave for a limited period, only transferred a
qualified and not an absolute property for the time, did
or not give too limited an interpretation to the writing
then under consideration, is not material, inasmuch as
no rational doubt can arise, that the will of Job John-
son vested the absolute right of property to the slave
Lytha, in his widow, Margaret Johnson, during her life.

The case of *Young's adm'r.* vs *Small,* is a direct au-
thority in favor of the principles in this opinion, and
the instruments of writing in the two cases, are so simi-
lar, as to prohibit a construction that would give to
them the same effect.

The Court below having decreed the children of Lytha
to the heirs of Job Johnson, dec'd. part of whom were the
complainants in the bill, the decree is reversed and cause
remanded, with directions to dismiss the bill with costs.

*Letcher and McKee* for appel'ts; *Turner* for appellees.