# WINTER TERM, 1859. 453

Jane (of color) vs. Prater's administrator, &c.

## CASE 25—PETITION EQUITY—DECEMBER 23.

# Jane (of color) vs. Prater's administrator, &c.

### APPEAL FROM FLEMING CIRCUIT COURT.

1. A void devise of a slave to a free negro imparts no right of freedom to such slave.

2. The doctrine is well settled, in this and other States where slavery exists, that the children follow the condition of the mother at the time of the birth, according to the maxim *partus sequitur ventrem.*

3. A will contains these clauses: "It is also my wish and desire that negro Jinny shall be free on the day of my death. And it is further my wish and desire that negro *Diner* shall serve six years after the day of my death. Negro Bob to serve two years after the day of my death; and negro Tom to serve three years after my death." * * * * "If the above named negroes cannot be freed under the law of this State, they shall be sold for cash after the death of my beloved wife, and the money be divided equally between," &c. *Held*—That *Diner* was a slave up to the termination of the period of six years from the day of the testator's death, and that a child born of *Diner* within the six years is also a slave. (2 *Bibb*, 298; 5 *Dana*, 207; 3 *B. Mon.*, 60; 8 *Ib.*, 471; 16 *Ib.*, 274.)

W. H. Cord, for appellant, cited 10 *B. Mon.*, 104; 4 *Dana*, 247; 7 *B. Mon.*, 406; 16 *Ib.*, 283; 4 *J. J. Mar.*, 102.

T. N. & D. W. Lindsey, and L. W. Andrews, for appellees, cited *Rev. Stat.*, 628, *sec.* 6; *Prater vs. Pines, &c., MS. opinion January* 14, 1859; 2 *Bibb*, 298; 3 *B. Mon.*, 60; 5 *Dana*, 207; 8 *B. Mon.*, 471.

JUDGE WOOD DELIVERED THE OPINION OF THE COURT:

In the case of *James H. Prater vs. Edward Pines et al.*, it was decided by this court, at the last December term, that the devise of the woman Jane to Edward Pines, a free man of color, contained in the seventh clause of the will of Jeremiah Prater, (the 2d,) was ineffectual and utterly void; and, as a consequence, that said woman, not being disposed of by the will, passed to the personal representative of said Prater, as in case of intestacy. At that time there was no claim made by Jane, nor by any one in her behalf, to freedom.

Since that decision, an action was commenced in the Fleming circuit court, in the name of Jane, against the administrator of the aforementioned testator, in and by which it was

454 METCALFE'S REPORTS.

Jane (of color) vs. Prater's administrator, &c.

claimed for her that the devise aforesaid to Pines was, in fact, made for the exclusive use and benefit of Jane; and it seemed to be supposed that under that void devise she was entitled to some sort of benefit or advantage or right; but exactly what the right or benefit was, did not seem to be very well defined.

The petition contained a prayer that the administrator be restrained from removing Jane from the State and selling her, and that he be compelled to execute the will of said Prater according to its true spirit and intent.

For the reasons given in the opinion in *Prater vs. Pines*, (*supra*,) we are satisfied that the devise to the free man of color of the slave Jane was void and ineffectual for any purpose. Jane acquired no right by it, and can obtain from it no benefit whatever. Her condition as to freedom or slavery is unaffected by that void devise, and unless she can maintain her right to freedom upon some other ground, we must still decide that she belongs to the administrator of Jeremiah Prater, (the 2d,) as part of the testator's estate of which he died intestate.

But Jane claims that she is a free woman upon another ground. She now asserts a right to freedom under, and in virtue of, certain provisions contained in a will made by Jeremiah Prater (sr.) in 1812, and claims to have never been a slave, but free from her birth.

That will contains this clause, namely: "It is also my wish and desire that negro Jinny shall be free on the day of my death. And it is further my wish and desire that negro Diner shall serve six years after the day of my death. Negro Bob to serve two years after the day of my death; and negro Tom to serve three years after my death."

In a subsequent clause of the will, the testator provides and directs, " that if the above named negroes cannot be freed under the law of this State, they shall be sold for cash after the death of my beloved wife, and the money divided equally between Jeremiah Prater, Zephaniah Prater, Ashford Prater, and Patsy Collins."

Jane asserts a right to freedom upon the grounds (1) that she is a child of the woman Diner mentioned above; and (2) that Diner was free, by the will of the elder Jeremiah Prater, from the day of his death.

It may be regarded as established conclusively by the evidence contained in the record, that Jane was a child of the woman " Diner," and that she was born before the expiration of the period of six years from the day of the death of the testator, J. Prater, (sr.)

Whether Jane is a slave or a free woman depends upon the condition in which her mother was, as to freedom or slavery, between the date of her former master's death and the termination of the period of six years from that event. It is to be regarded as the well settled doctrine of this State, and the other States of the Union in which slavery exists, " that the children follow the condition of the mother at the time of the birth, according to the maxim *partus sequitur ventrem*."

Hence it follows, if the " negro Diner," the mother of Jane, was, at the time of Jane's birth, a slave, the latter is now a slave.

Whether " Diner" was or not a slave when Jane was born, depends upon the intention of the testator, deducible from the language he has employed in his will for the expression of that intention.

It is first to be observed, as an important fact, that there are no words indicating an intention to give to Diner freedom immediately upon the death of the testator, as there are in reference to the " negro Jinny." In regard to her the testator says, " that negro Jinny shall be free on the day of my death."

Of Diner he says, she " shall serve six years after the day of my death." No words are there conveying the idea of the gift of an immediate right to freedom, the enjoyment of which is postponed to a future day. But the words employed indicate that the condition of slavery, so far as it concerned Diner, was to continue for six years from the day of the testator's death. This intention of the testator is manifested more certainly by the discrimination made between Jinny and Diner. " Jinny shall be free on the day of my death; but Diner shall serve six years after the day of my death." If he had intended Diner to be free at the same time Jinny was, he would certainly have said so.

The intention of the testator that Diner, Bob, and Tom were not to be free at his death, is still more clearly established by

the subsequent provision in reference to them. He says : "If the above named negroes (meaning clearly the three last named) cannot be freed under the law of this State, they shall be sold for cash," etc.

Freed when ? Undoubtedly at the termination of their respective terms of slavery, as fixed above. The phraseology used by the testator points to a period some distance in the future. We are bound to presume that he knew what the law of the State was when he was making his will. But he did not know what it would be at the end of six years; and, therefore, it is provided, as to Diner, that if she cannot be freed at the end of six years, she is to be sold. · The conclusion is irresistible that Diner was a slave up to the termination of the period of six years from the day of the testator's death.

The end of the six years was, of course, the point of time at which a sale was directed to be made, in case the slaves could not *then* be freed. The reservation thus made of the power of sale, and the direction thus given to sell upon the named condition, negative, in the most unmistakable and emphatic manner, any idea of antecedent freedom for these slaves.

And Jane having been born of "Diner" within the six years from the testator's death, and whilst she remained a slave, was and is also a slave; the condition as to liberty or slavery of the child being the same as the mother's at the birth.

This conclusion is not in conflict with the opinion in *O'Bryan vs. Goslee*, (10 *B. Mon.*,) relied upon in argument by the counsel of appellant.

This case is quite distinguishable, in the principal and controlling feature thereof, from *that* case, as well as from the cases upon which it was decided. In *O'Bryan vs. Goslee* there was no room to doubt that a proper construction of the will gave to the negroes a right to immediate emancipation, with a reservation to the heirs of the testator of merely the use of their services until they attained certain prescribed ages. The words of gift are in the present tense—"I give and bequeath to all my negroes their freedom"—which clearly indicates the intention of the testator to terminate the slavery of his negroes

at his death, and that for certain prescribed periods thereafter they were to be held to service, but not as slaves. And this is the distinguishing feature or characteristic of that class of cases to which *O'Bryan vs. Goslee* belongs.

This case, however, belongs to a different class, the peculiar feature of which is, that only a prospective right of emancipation is given, to take effect at a given time in the future, and (in this case) *then* only upon condition.

*Ned vs. Beal*, 2 Bibb, 293; *Emaline vs. Jameson*, 5 Dana, 207; *Esther and others vs. Akins' heirs*, 3 B. Mon., 60; *Johnson's administrator vs. Johnson's heirs*, 8 B. Mon., 471; *Spurrier's heirs vs. Parker, &c.*, 16 B. Mon., 274, furnish ample authority for our conclusion in this case. In the case last mentioned the language of the deed was more favorable to the claim of appellees to freedom than the language of Prater's will is to the claim of appellant.

The judgment of the circuit court being in exact accordance with this opinion, it is ordered that said judgment *be affirmed.*