490       CASES IN THE SUPREME COURT

Phebe et al. vs. Quillin et al.       [JULY

## PHEBE ET AL. VS. QUILLIN ET AL.

Where the copy of a will is filed as an exhibit to a bill in chancery, it should appear that the will was duly probated; but if the copy filed does not show such probate, the allegations in the bill, that the original will was duly probated and admitted to record and administration thereof granted, are sufficient to authorize the reading as evidence a duly authenticated copy of such will and its probate.

The Acts of 1859, forbidding any further emancipation of slaves, are not to be understood as affecting instruments of emancipation made before the Acts, though the emancipation was not to be completed till after their passage.

The clause in a will: "It is my wish and desire that my slaves should be set free at the expiration of seven years from my death," is an actual gift of freedom to the slaves, which may be enforced at the time specified.

When a gift of freedom, is to take effect, under the terms of a will, at a future day, a suit for freedom brought before the day is premature and will be dismissed.

Although negroes entitled to freedom but held in slavery, might in some cases come into equity for relief, the statutory remedy ought to be pursued when it can be.

Where a number of negroes claim their freedom under the same instrument, and complain of the same defendants, it is consonant with the authorities and convenient in practice for them to unite in one suit for freedom under the statute.

The question of freedom should be determined, like every other question made before the courts, solely upon its legal aspects, without partiality or prejudice, and without regard to its effect upon the party or others.

*Appeal from Union Circuit Court in Chancery.*

Hon. LEN. B. GREEN, Circuit Judge.

LYON and ASKEW, for the appellants.

The plaintiffs had the right to seek relief in chancery, though the statute gives them an action at law, as held by this court in the case of *Bob alias Robert Crow vs. Powers,* 19 *Ark. Rep.* 437. There this Court cites and adopts the rule held in *Nichols vs. Burris,* 4 *Leigh's Reps.* 296; *Cornish vs. Wilson,* 2 *Gill's Rep.* 299, and *Lomax on Ex'rs.* 334, " that the assent of the executor to the enlargement of the slave emancipated by will is as necessary as in ordinary cases of specific legacy." That the assent being necessary, and the same only obtaining in a court of law, if the executor withholds his assent to the enlargement of the slave under a testamentary emancipation, the slave may sue in a court of equity for his freedom. *Bob alias Robert Crow vs. Powers,* 19 *Ark. Reps.* 437–8, and authorities there cited.

It is urged on the part of appellees that by the laws of this State, emancipation to take effect in future cannot be enforced. This is certainly not the law as we understand it. The cases relied on by appellees have no application to the case at bar. See *Jackson vs. Bob, and Harriet et al. vs. Swan and Dixon,* 18 *Ark. Reps.* The question as to the right to emancipate slaves by will to take effect in future, did not arise in either of those cases. And to hold it to be the law that a testamentary emancipation must result in the enlargement of the slave, at the death of the testator, or otherwise the emancipation could not be enforced, would be virtually denying the right to emancipate by will, thereby destroying the force and effect of the statute. See statutes by *Gould, ch.* 64, *p.* 483. We conceive that the court must in order to give force and effect to this statute, and that it may harmonize with our administration laws, and follow the current of previous decisions, particularly in the case of *Bob alias Robert Crow vs. Powers,* 19 *Ark. R.* 437 and 8, hold

that the enlargement of the slave under a testamentary emancipation may be enforced at any time after the death of the testator, upon a showing that neither the law of administration nor the provisions of the will, hold any further claim on the services of the emancipated. Certainly the difference between a will emancipating slaves, requiring their enlargement on the will having force and effect, and a will emancipating slaves, requiring them to serve under the charge of testator's executor for a term of years, for the purpose of paying the debts of testor's estate, is without distinction, for *in the first*, the law would give the executor the right to hold them until the law of dower and administration had no further claims upon the testamentary emancipated. Then with the assent of the executor, the emancipated could obtain their enlargement, and if the assent of the executor was illegally withheld, the emancipated could obtain enlargement by bill in equity, showing that the claims of the administration law no longer attached. And *in the second*, whenever the object and purpose were accomplished, for which time was allotted by the provisions of the will, for the emancipated to serve, whether that time had elapsed or not, if the assent of the executor was withheld to the enlargement of the emancipated, a court of equity under such state of case would take jurisdiction to the enlargement of such slaves.

True, the seven years specified in the will for complainants to remain in charge of the executor named in the will, had not elapsed at the filing of the bill, but then it is admitted by the demurrer that this seven years service was for the purpose of paying testator's indebtedness, for which said complainants as property were liable, and that the services of complainants in the hands of the administrator of said estate had paid and fully satisfied all demands against said estate and all charges of administration, before the filing of the bill.

MARR and HEMPSTEAD, for the appellees.

In this case, the appellants have selected the wrong forum; a court of chancery has no jurisdiction in this State of suits for freedom:

Emancipation laws, if not absolutely *contrary* to public policy, are at least of *doubtful* policy, and should be *strictly* construed and pursued. Not only the *forum*, but the *form* of action, prescribed by such laws, should be adopted. The law having prescribed a form of remedy, *that* remedy should be followed, though there are no negative words forbidding a resort to a different forum. The right given, to sue for freedom in a prescribed *forum* and in a prescribed form, is a prohibition of all others. 13 *Ark.* 519; 18 *Ib.* 495; 5 *Smede & Marshall* 609; 14 *Johns. R.* 324; 19 *Ib.* 53; *and authorities passim.*

The *form* of action prescribed by statute, is, an " action of trespass for false imprisonment." *Revised Statutes, sections* 9 *and* 10, *chapter* 74.

The *forum* prescribed by statute, is the *law side* of the circuit court. *Sections* 1, 9 *and* 10, *same chapter.*

It is asserted that there is no law in this State, which, constitutionally, either authorizes or permits the emancipation of slaves.

In the absence of constitutional and legislative provision, no slave could be emancipated in this State. From motives of public policy, emancipation is regulated and limited by law; 13 *Ark.* 519; *Jackson vs. Bob*, 18 *Ark.* 409; *Constitution, sec.* 1, *art.* 7.

*Section* 1, *article* 7, of the constitution of Arkansas, declares, among other things, that the General Assembly: "Shall have power to pass laws to permit owners to emancipate them, saving the rights of creditors, *and preventing them from becoming a public charge.*"

The article of the constitution referred to prohibits the emancipation of slaves, *without providing against all public charge;* and the act of the legislature (*Rev. Stat. ch.* 63,) does not require that *provision shall* be made for the maintenance of each and every class of slaves, *in any and all events*, and a law which does not so provide is void.

Though the emancipation act *is constitutional*, the appellants must fail notwithstanding.

In at least two essential particulars, there is a failure to comply with the statute. 1st. No provision is made by the will for the maintenance of appellants; and without this, neither the constitution, nor *even* the statute gives the right to freedom. 2d. For the *purpose of this suit*, the will has not been proven as by law required. Section one of the emancipation act requires the *will* to be proven or acknowledged before the *Circuit Court;* and this court seems, incidentally, to have so ruled in *Jackson vs. Bob*, 18 *Ark*. 411.

The 3d item of the will, under which the claim to freedom is asserted, is as follows, to-wit: " It is my *wish* and *desire*, that all my slaves both in Louisiana and Arkansas, or wheresoever the same may be, *should be set free at the expiration of seven years from* my death."

This clause of the will is insufficient to manumit the appellants. Because the testator does not himself manumit, but merely expresses the *wish* and *desire* that at a *future* time, and *after his death*, his slaves "*should be set free,* by *some* other *person.*" The instrument must *itself* completely emancipate. *Nothing* must remain to be done by a third party. The act is incomplete in this case; and there is an attempt to delegate the power to emancipate to a third party, which cannot be done. The owner must *himself* emancipate. See *section* 1, *chapter* 63, *Rev. Stat.; Const. Ark.*, art. 7, *sec*. 1. Also 18 *Ark*. 399; *Ib*. 495.

This suit was prematurely commenced. The time at which appellants were to be set free had not arrived, when it was commenced.

But there is a remaining question worthy of grave consideration, growing out of the recent legislation in our State in reference to emancipation and the removal of free negroes. The Acts of 2d and 12th February, 1859, (*Acts p*. 69, 175,) do not merely declare that no deed or will, shall be effectual to emancipate slaves, *in future*, but stronger than that, expressly enact, "*there shall be no further emancipation of slaves in this state.*"

The whole act concerning emancipation, and the whole act

concerning freedom, (*Gould's Digest* 483 and 550,) were in effect repealed, and by the repeal of a statute all proceedings commenced under it immediately cease. 5 *Barr* 204; 14 *Ill.* 334; 17 *Ala.* 828; 1 *Hill* 327; 20 *How.* 529.

CARLETON and GARLAND & RANDOLPH, also for the appellees.

Mr. Justice FAIRCHILD delivered the opinion of the Court.

On the 27th of September, 1853, Joshua Averett of Union county is alleged to have made his last will and testament, in which is the following clause.

"Item 3rd. It is my wish and desire that all my slaves both in Louisiana and Arkansas, or wheresoever the same may be, should be set free at the expiration of seven years after my death, my nephew, William Jacob Averett, to have charge of said slaves, to receive the revenue arising from the same."

Relying upon the above clause as a testamentary grant of freedom to them, Phebe and eighteen others, her children and grand children, on the 20th September, 1857, filed their bill on the chancery side of the Union Circuit Court, against William Jacob Averett, and others, as heirs of Joshua Averett, the deceased testator, and against John Quillin and Thomas A. W. Sledge, the last two of whom are charged to be holding them in a State of slavery with intent to make that condition permanent; that they have divided the plaintiffs among them in some way unknown to the plaintiffs, with the view of appropriating them as slaves for life to the use and disposition of themselves, the said Quillin and Sledge.

Sledge is charged to have the general control of the plaintiffs, and under letters of administration annexed to the will, although Quillin and Sledge claim the right of property in them by virtue of a purchase from William Jacob Averret, who was the general legatee of the testator, Joshua Averett.

It is further alleged that William Jacob Averett never qualified as the executor of the will of Joshua Averett, that he never took control of the plaintiffs as authorized in the will, and that

he never claimed to hold them as slaves for life, and that when he sold his interest to Quillin and Sledge he only sold it as a right to the plaintiffs for the term of years specified in the will, and that Quillin and Sledge, or one of them, have recognized the right of the plaintiffs to be free, by promising them freedom if they would serve Quillin and Sledge three years after the expiration of seven years from the death of Joshua Averett. The bill prays that the plaintiffs be emancipated by the court.

A demurrer to the bill was interposed by all of the defendants but William Jacob Averett, which was sustained by the court, the bill was dismissed, and the plaintiffs appealed to this court.

Several objections are made, on the part of the appellees, to the proceeding of the plaintiffs, which do not arise upon the pleadings.

And the gravest of these objections is, that under the laws enacted in 1859, forbidding any further emancipation of slaves— annulling any deed or will that provides for such emancipation, this suit intended to make effectual the emancipation in the will prescribed or recommended, cannot be sustained.

Notwithstanding the broadness of the words of the acts of 1859, we do not understand them as affecting instruments of emancipation made before the acts, though the emancipation was not to be completed till after their passage. The construction of laws should be such as to give them effect in future, and not to act upon rights vested under former laws, or upon privileges or expectations that have been enjoyed and permitted as common and legal.

Besides, it is expressly provided by statute, that no proceeding civil or criminal, pending at the time of the repeal of a statutory provision, shall be affected by such repeal, but shall proceed as if the repealed statute were in force. *Gould's Dig. chap.* 165, *sec.* 9.

And though this statute may seem to have special reference to such legal proceedings as would be pending when the first Revised Statutes should come into force, and take the place of

the Territorial and previous State statutes, yet the generality of its terms, we think, makes it an existing binding law. And the act of 1846, contained in the section before the one just cited, upholding criminal prosecutions on repealed statutes, strongly favors this construction of the present efficacy of the statute above cited.

The argument is, moreover, only the same, though brought into stronger light by the nearer relation to this case of the acts of 1859, repealing the law permitting emancipation of slaves, that was urged in *Campbell vs. Campell*, 13 *Ark.* 518, that emancipation was forbidden by the law that prohibited the emigration of free persons of color into the State. That argument was then held by this court to be unsound, and we hold in this case, upon the same principle, that slaves emancipated previous to the acts of 1859, have a right to their freedom and to have it adjudged to them by the proper courts, the courts having nothing to do or to consider relative to the condition of emancipated slaves, when made free.

It is also urged in argument that the will exhibited with the bill, is no will, as it is unaccompanied with any probate or certificate of registry—and that nothing is shown in the bill to confer the right to freedom upon the plaintiffs.

Without doubt, upon proper issues, a writing purporting to be a will, must be probated to have effect as a will. But the bill does allege that the original of the will copied in the bill, was on file in the District Court of the Parish of Jefferson, in Louisiana, where by the laws of Louisiana it was required to remain, that it was duly probated and admitted to record.

And the bill alleged further, that, after the lapse of some years, and the existence of two administrations upon the estate of Joshua Averett, in Union county, participated in by Quillin and Sledge respectively, one or the other of them produced the will to the Probate Court of Union county, and caused it there to be proved and recorded as the last will of Joshua Averett, deceased; that upon such probated will, letters of administration with the will annexed were granted by said court to the defend-

ant, Sledge, and that as such he is still acting, and exercising control over the plaintiffs, holding them as slaves belonging to the estate of Joshua Averett. These allegations are sufficient to have introduced upon them in evidence a certified copy of a probated will of Joshua Averett, like the uncertified and unprobated copy filed as an exhibit; and as the plaintiffs rely upon the will as creating and proving their right to freedom, a properly authenticated copy of the will and its probate should have been filed with their bill and as part of it, and must have been before any decree could have been made in their favor.

Yet as the decree is to be affirmed upon another and single point in the case, and without concluding the plaintiffs from bringing their claim to freedom again before a proper tribunal, we shall, under the allegations of the bill admitted by the demurrer to be true, decide the point contested before us, as to the right granted to the plaintiffs by the will supposing it to be capable of proof and authentication as the last will of Joshua Averett.

And our opinion is that the terms of the will clearly indicate the testator's intention that the plaintiffs should be made free at the expiration of seven years from his death, that the expression of such intention conferred the right of freedom upon the plaintiffs at the time mentioned, at which time it became the duty of the administrator with the will annexed to execute the will, and that if he failed in the discharge of this duty, the law, acting through its courts, would declare and secure the right of the plaintiffs.

The foregoing proposition involves two points: That the words, "It is my wish and desire that my slaves should be set free at the expiration of seven years from my death," are not only expressions of the the testator's wish and desire, but an actual gift of freedom to the slaves.

And that a prospective emancipation is legal and effectual.

Upon the first point, see 2 *Lomax on Exr's* 322; *Elder vs. Elder*, 4 *Leigh* 256, 260, 261; *Nancy vs. Snell*, 6 *Dana* 152; *Cobb on Slavery*, sec. 366; *Wood vs. Humphrey*, 12 *Grattan* 333.

The principle of the second point is fully sustained by the

OF THE STATE OF ARKANSAS. **499**

Term 1860.]                  Phebe et al. vs. Quillin et al.

decision of this court in *Bob vs. Powers*, 19 *Ark*, 424; also see *Pleasants vs. Pleasants*, 2 *Call* 348; *Maria vs. Luchbaugh*, 2 *Randolph* 241; *Mayho vs. Sears*, 3 *Iredell Law Rep.* 227; *Johnson vs. Johnson*, 8 *B. Mon* 471.

We hold that the plaintiffs were to be free in seven years from the testator's death, and it necessarily results from that, that till that time had passed they would be in their natural state of slavery. The testator died about the 2d of October, 1853. Then until the corresponding time, in 1860, the plaintiffs had no right to freedom, could not sue for it, and this suit being brought the 20th of October, 1857, was prematurely brought. The plaintiffs had no right upon which to found a suit; they were not persons capable of promoting a suit for any purpose.

And upon this ground, solely, as brought to our notice by the second and fourth causes of demurrer specially set down, do we affirm the decree of the court below.

Many of the authorities cited above, and all that numerous class of cases in the books, which determine the condition of children, born between the act conferring future emancipation and its completion, sustain this construction of the will, and without authority we must have held such to be the plain meaning of the will.

The reason set up in the bill for the suit being brought before seven years from Joshua Averett's death, is not a good one, it has no foundation in the will. What was the reason operating upon the testator to defer the gift of freedom is not to be gathered from the will, and cannot therefore be known. Yet the most natural construction of it entirely destroys the theory of the bill that the emancipation was deferred to obtain a fund to pay the testator's debts, for the will gives to William Jacob Averett the use of the negroes, until the seven years should have passed. Speculation upon the motives for making the will as it is, is unprofitable; the will is the law and reason for itself.

We should be slow to decide that negroes entitled to freedom

but held in slavery, could not, in any case, come into equity for relief, yet from the difficulty of supporting such a suit, the statutory remedy ought to be pursued, when it can be.

In this case, unless the assent of the administrator with the will annexed were necessary to maintain the action, we see no reason why the nineteen negroes could not sue under the statute, if they could sue together, as did Abby Guy and her children in *Daniel vs. Guy*, in 19 *Ark.* 122. And we believe this to be consonant with the authorities, and a practice much to be desired for its convenience to all parties, where the plaintiffs claim under the same instrument, and complain of the same defendants.

Much has been said, by the counsel for the respective parties, upon the liberality and strictness with which suits for freedom should be treated by courts.

In the earlier cases, the general rule of the courts, in States that are now slave States, seemed to be and was often so announced from the bench, that the courts would lean towards the grant of freedom, while, in the later decisions, there would seem to be reason to fear that the great reaction in public sentiment, in the southern States, relative to the emancipation of slaves, may produce a habit of construction so stringent as to endanger the even balance which should ever be extended to the rich and the poor, the white and the black, the free and the bond.

The question of freedom should be determined, like every other question made before the courts, solely upon its legal aspects, without partiality to an applicant for freedom, because he may be defenceless, and a member of an inferior race, and certainly without prejudice to his kind and color, and without regard to the sincere convictions that all candid, observing men must entertain, that a change from the condition of servitude and protection, to that of being free negroes, is injurious to the community, and more unfortunate to the emancipated negro than to any one else.

Let the decree be affirmed, without prejudice to the rights of the plaintiffs to institute such further legal proceedings as they may be advised may be necessary to secure their rights.