### ESTATE OF A. C. WHITCOMB, DECEASED.

[No. 7871; decided May 20, 1890.]

Wills.—Precatory Words are Given only their natural force.

Wills—Precatory Words.—Where a testator (who is a lawyer) devises property to a nephew and to the nephew's son, and recommends to the nephew to leave his portion thereof, after his own death and the death of his wife, in trust for such son and to his children or descendants, if any are living at the time of the death of the son, and if there are none so living then to Harvard College, the word "recommend" is not equivalent to a direction or command, but is only a suggestion, which the beneficiary is free to follow or ignore.

E. J. Pringle and Jerome B. Lincoln, for A. D. Tut.le.

Sidney V. Smith, for Harvard College.

COFFEY, J.   A. C. Whitcomb, senior member of the early day San Francisco law firm of Whitcomb, Pringle & Felton, having acquired a considerable fortune by land speculation and transactions in stocks, withdrew from that firm in 1867. He continued at the bar nominally, but became president of the Citizens' Gas Company, and was generally engrossed with his own private affairs. In 1870 he made a visit to Paris, France, and soon concluded to make that gay capital his permanent home. He was a bachelor of about forty-five years, but now married a French woman, by whom he had

two sons. He died in Paris in 1888, leaving an estate worth $4,500,000, principally in California lands and eastern railroad bonds, the greater part of which he left by will to his two sons and their mother. Jerome Lincoln, of San Francisco, was named executor of the will to administer that part of the estate lying in California.

Article 6 of the will is in the following words: "I give to my nephew, the said Adolphus Darwin Tuttle, and to his son, Charles Whitcomb Tuttle, both of said Hancock, all my interest, either real, personal or mixed, in the Jimeno Rancho, so-called, wholly or partly in the counties of Colusa and Sutter, in said California, in all mortgages, contracts, debts or due arising therefrom, and I recommend to my said nephew to leave his portion thereof, after his own death and the death of his wife, in trust for the said Charles Whitcomb Tuttle and to his children or descendants, if any be alive, at the time of the death of his said son; and, if there be none so alive, to Harvard College, Cambridge, Massachusetts, one-half of the income thereof to be used by said College for the assistance of students of said College to complete their regular course therein, and the other half of the income thereof for the general uses of the College, apart, however, from any participation therein by the Divinity School."

The elder Tuttle—his residence, "said Hancock," being in New Hampshire—came to San Francisco after the probate of the will, and filed a petition requesting the court to construe this article of the will, exactly define his interest under the devise, and make a decree immediately distributing to him in his own absolute right the undivided one-half of the Jimeno Rancho.

Harvard College opposed this petition on the ground that the petitioner was given a life estate only, to be followed by a life interest in his wife, with remainder over to their son for life, with remainder over in fee to the son's issue, or, in default of such issue, to Harvard College.

The question presented was the construction to be put upon the single word "recommend." Was it tantamount to a direction or command, or was it only suggestion which the beneficiary first named was free to follow or ignore?

The matter was very elaborately argued, orally and in printed brief. The judge found and held that A. D. Tuttle was the foster brother of the deceased, who was seeking to pay to him the debt of nurture owing to the devisee's mother; that it was clear from the terms of the devise that, whether the language used was the expression of a trust or not, the testator intended the Tuttles, father and son, to be the chief objects of his bounty, for the enjoyment by them is given in no equivocal terms, and the remainder, by recommendation or trust, in Harvard College, is to vest only at a distant period and upon failure of issue.

To impose upon the beneficiary a trust which, by destroying the power of alienation, sacrifices the enjoyment to perpetuate the title, impoverishing the kindred to enrich the stranger, would be to reverse the testator's bounty. To ascribe this intention to the testator is at the best unnatural; but to suppose that he intended to create in the interest of the stranger a trust whose operation in favor of its beneficiary is to commence, in all probability, not till the lapse of forty years, whilst its intermediate effect is to be an absolute blight upon the dearer beneficiaries, is to convict him of a scheme as foolish as unnatural.

The character of the property excludes the idea that a life enjoyment in it was all that was intended for the Tuttles. While it embraces several thousands of acres and is worth many thousands of dollars, it consists of town lots wholly unimproved and unproductive, of swamp and overflowed lands comprising part of a reclamation district, which lands were assessed last year for $8,000, are now covered by water and wholly unproductive; and of uplands whose only yield is a minimum return in wheat.

Such is the property which Harvard College would have the kindred of the deceased condemned to preserve intact for, it may be, half a century, and then surrender!

It was shown by the testimony of witnesses that in the mind of the deceased the time had come to realize the value of these lands by making sales in proper parcels. For this express purpose the legal title had been vested in the cotenant, George Hagar. To declare now that A. D. Tuttle holds

the lands in trust would be to defeat the testator's known policy.

Precatory words are to be given only their natural force: Note to Harrison v. Harrison's Admx., 44 Am. Dec. 378, and cases cited: 2 Pomeroy's Equity, secs. 1016, 1017.

The Colton Case (Colton v. Colton, 127 U. S. 300, 8 Sup. Ct. 1164, 32 L. Ed. 138), so confidently relied on by Harvard College, does not sustain its position. While the strong pressure of surrounding circumstances would seem to have been controlling in that case, the United States supreme court yet found that "recommendation," standing alone, would have been too weak to create a trust, and relied upon its being followed up by other precatory words, to wit: A special request that the executrix would provide for relatives of the deceased.

It is perfectly clear that the testator knew the distinction between a trust and a mere recommendation. In article 3 of his will he gives $100,000 in railroad bonds to this same A. D. Tuttle, in trust, to pay over the income to a lady cousin; and in article 7 he gives property to Jerome Lincoln, in trust, to pay over the income to his wife and children. In article 4 he gives to his wife $200,000 in railroad bonds, and recommends her not to dispose of them without the advice of a certain friend.

If the testator intended in article 6 simply to create a life estate in A. D. Tuttle, with remainder over, he would have adopted the forms familiar to every lawyer for creating such estates.

The conclusion of the court is that no trust is imposed by article 6 of the will, but that by its terms A. D. Tuttle takes one-half of the Jimeno Rancho as absolutely as his son takes the other half, and is entitled to a decree distributing the same to him immediately.

---

## PRECATORY WORDS AND TRUSTS.

The Term "Precatory Trust" Defined and Explained.—Precatory words, as defined by Bouvier in his Law Dictionary, are expressions in a will praying or requesting that a thing be done, while, as defined by Burrill in his Law Dictionary, they are said to be words of entreaty, request, desire, wish or recommendation employed in wills as distinguished from direct and imperative words. Such words when addressed to a devisee or legatee will make him a trustee for the

person in whose favor they are used, provided that the testator has pointed out with sufficient certainty both the object and subject matter of the intended trust: See monographic note to Harrison v. Harrison's Admx., 44 Am. Dec. 365.

In Bohon v. Barrett, 79 Ky. 378, the court, in discussing the nature and meaning of precatory trusts, said: ''The doctrine of precatory trusts is well established. They grow out of words of entreaty, wish, expectation, request or recommendation frequently employed in wills. The meaning of the word 'precatory,' according to its ordinary use, does not embrace a command; it means beseeching; suppliant; prayerful. In its primal sense, as descriptive of an act relative to a right, it conveys the idea that the right is equivocal or uncertain, because it impliedly depends on the will of another, who is brought to exercise his power over it. If such power were natural or independent of the testator, then no command of his to exercise it could be enforced; but where the power or discretion is created by will, it is subject to such limitations as the testator sees proper to impose, and whatever may be the character of the words which he uses to indicate his will or wish, whether perceptive or recommendatory, they are imperative—'the wish of a testator, like the request of a sovereign, being equivalent to a command.'

''His wishes and desires as to the disposition of his property after his death constitute his will: Bart v. Herron, 66 Pa. 402. And, although such desire is not expressed in mandatory language, yet if from the language used it can be inferred, with reasonable certainty, what the desire of the testator is, it will be treated by the courts as his command and executed accordingly.''

Likewise, in the well-considered case of Colton v. Colton, 127 U. S. 300, 8 Sup. Ct. 1164, 32 L. Ed. 138, the court observed: ''As to the doctrine of precatory trusts, it is quite unnecessary to trace its origin, or review the numerous judicial decisions in England and in this country which record its various applications. If there be a trust sufficiently expressed and capable of enforcement by a court of equity, it does not disparage, much less defeat it, to call it 'precatory.' The question of its existence, after all, depends upon the intention of the testator as expressed by the words he has used, according to their natural meaning, modified only by the context and the situation and circumstances of the testator when he used them. On the one hand, the words may be merely those of suggestion, counsel or advice, intended only to influence and not to take away the discretion of the legatee growing out of his right to use and dispose of the property as his own. On the other hand, the language employed may be imperative in fact, though not in form, conveying the intention of the testator in terms equivalent to a command, and leaving to the legatee no discretion to defeat his wishes, although there may be a discretion to accomplish them by a choice of methods, or even to define and limit the extent of the interest conferred upon his beneficiary.''

In considering the application of the doctrine of precatory trusts, it is well to bear in mind that it is generally not necessary that technical language be employed to create a trust, and that it is enough if the intention to create a trust is apparent from the will. Hence, it follows that precatory words—that is, words of recommendation, entreaty, request, wish or expectation—may be sufficient to create a trust in favor of the person or persons in whose favor they are used. The question with respect to the precatory words used being whether the precatory words are used with an intention to govern the conduct of the party to whom they are addressed or merely to indicate or suggest what he thinks would be a reasonable exercise of the discretion of the legatee or devisee in the use of the gift, but leaving it to the legatee or devisee to exercise his own discretion in the matter: Knox v. Knox, 59 Wis. 172, 48 Am. Rep. 487, 18 N. E. 155.

The doctrine of precatory trusts seems to be founded upon the rule of construction respecting wills, that the testator's intent, when ascertained, is to be carried out by whatever words conveyed. Consequently, as we have seen before, precatory words are treated as imperative and creating a trust where both the object and subject matter of the precatory words is certain unless a clear discretion or choice to act or not to act is given, or the prior disposition of the property imports an absolute or uncontrollable beneficial ownership: Harrison v. Harrison's Admx., 2 Gratt. 1, 44 Am. Dec. 365.

**Present Tendency of Courts Respecting Creation of Precatory Trusts.**—There is considerable difference between the extent to which the earlier English and American cases went in sustaining the doctrine of precatory trusts and that which generally obtains at the present time with respect to such trusts.

Perhaps much of the confusion which exists among the authorities has been caused by the desire of the courts to follow strictly the intention of the testator in construing his will, and yet, on the other hand, not to declare the existence of a trust unless the intention to create a trust is clearly set forth.

The earlier English authorities were quite liberal in construing precatory words as creating a trust on the theory that the precatory words were a strong indication of the testator's intent as to the disposition which he willed, as a matter of fact, regardless of the courteous terms with which he expressed his will. In other words, the earlier decisions were rendered often on the tacit theory that precatory words, when addressed to near relatives or lifelong friends, were merely polite forms of couching a command.

This idea was shown to some extent in the oft-cited case of Warner v. Bates, 98 Mass. 274. The court in that case, in discussing the subject, said: ''We see no sufficient ground for calling in question the wisdom or policy of the rule of construction uniformly applied to wills in the courts of England and in most of the United States, that words of entreaty, recommendation or wish addressed by a testator

to a devisee or legatee will make him a trustee for the person or persons in whose favor such expressions are used, provided the testator has pointed out with clearness and certainty the objects of the trust, and the subject matter on which it is to attach or from which it is to arise and be administered. The criticisms which have been sometimes applied to this rule by text-writers and in judicial opinions will be found to rest mainly on its applications in particular cases; and not to involve a doubt of the correctness of the rule itself as a sound principle of construction. Indeed, we cannot understand the force or validity of the objections urged against it, if care is taken to keep it in subordination to the primary and cardinal rule that the intent of the testator is to govern, and to apply it only where the creation of a trust will clearly subserve that intent. It may sometimes be difficult to gather that intent, and there is always a tendency to construct words as obligatory in furtherance of a result which accords with a plain moral duty on the part of a devisee or legatee, and with what it may be supposed that the testator would do if he could control his action. But difficulties of this nature which are inherent in the subject matter can always be readily overcome by bearing in mind and rigidly applying in such cases the test that to create a trust it must clearly appear that the testator intended to govern and control the conduct of the party to whom the language of the will is annexed, and did not design it as an expression or indication of that which the testator thought would be a reasonable exercise of a discretion which he intended to repose in the legatee or devisee. If the objects of the supposed trust are certain and definite; if the property to which it is to attach is clearly pointed; if the relations and situation of the testator and the supposed cestuis que trust are such as to indicate a strong interest and motive on the part of the testator in making them partakers of his bounty; and above all, if the recommendatory or precatory clause is so expressed as to warrant the inference that it was designed to be peremptory in the donee—the just and reasonable interpretation is, that a trust is created, which is obligatory, and can be enforced in equity as against the trustee by those in whose behalf the beneficial use of the gift was intended.''

And in a recent case in California, that of Kauffman v. Gries, 141 Cal. 295, 74 Pac. 846, the court, in adverting to the evolution of the doctrine of precatory trusts, said: ''It appears from the early decisions in England that any and every precatory word was laid hold of to create a trust, but the modern cases in that country and the better considered cases in America have gone the other way, and the rule in California has been laid down that the ordinary and natural import of the words used will be followed, 'unless a clear intention to use them in another sense can be collected and that other can be ascertained': Estate of Marti, 132 Cal. 666, 61 Pac. 964, 64 Pac. 1071; Civ. Code, sec. 1324; Shaw v. Lawless, 5 Clark & F. 129; Williams v. Williams, L. R. 2 Ch. D. 12; Pennock's Estate, 20 Pa.

268, 59 Am. Dec. 718; Hess v. Singler, 114 Mass. 56. In Story's Equity Jurisprudence (vol. 2, sec. 1069), Judge Story says: 'The doctrine of thus construing expressions of recommendation, confidence, hope, wish and desire into positive peremptory commands is not a little difficult to be maintained upon sound principles of interpretation of the actual intention of a testator. It can scarcely be presumed that every testator should not clearly understand the difference between such expressions and words of positive direction and command; and that in using the one and omitting the other he should not have a determinate end in view. It will be agreed on all sides that where the intention of the testator is to leave the whole subject as a pure matter of discretion to the goodwill and pleasure of the party enjoying his confidence and favor, and where his expressions of desire are intended as mere moral suggestions to excite and aid that discretion, but not absolutely to control or govern it, there the language cannot and. ought not to be held to create a trust. Now, words of recommendation and other words precatory in their nature imply that very discretion as contradistinguished from peremptory orders, and therefore ought to be so construed, unless a different sense is irresistibly forced upon them by the context. Accordingly, in more modern times, a strong disposition has been indicated not to extend this doctrine of recommendatory trusts; but, as far as the authorities will allow, to give to the words of wills their natural and ordinary sense, unless it is clear that they are designed to be used in a peremptory sense.' ''

The early English and American authorities, together with the later authorities restricting the more liberal early English doctrine on this subject, were exhaustively discussed in the monographic note to Harrison v. Harrison's Admx., 44 Am. Dec. 377.

In Ellis v. Ellis' Admr., 15 Ala. 296, 50 Am. Dec. 132, the court, in an exhaustive opinion in which many of the more restrictive English cases were discussed, observed: ''These authorities, with many others which might be cited, show the tendency of modern decisions in England not to extend this doctrine of implied trust from precatory words, but to go back as far as may be consistent with the current of their previous adjudications, to what I humbly conceive to be the true rule of interpretation—that is, to give such recommendatory expressions their natural, ordinary and familiar sense, and having arrived at the true intention of the testator, to let that intention, if lawful, be the rule of decision in the particular case. Thus, the court will execute the will of the testator, and not by a forced technical construction of his words, make a will for him.''

Hence, it may be said that the modern tendency is to restrict rather than to extend the doctrine of precatory trusts, although where the subject and object of the trust are clearly defined in the precatory words or clauses, the courts will construe the will as creating what is commonly called a precatory trust: Mitchell v. Mitchell, 143 Ind. 113, 42 N. E. 465; Major v. Herndon, 78 Ky. 123.

"Precatory words in testamentary instruments, that is words of request, desire, or recommendation, as distinguished from direct or imperative words, have been the subject of a vast amount of discussion. In former times the courts seem to have been disposed to lay hold of almost any precatory word to create a trust. In recent years, however, courts have, practically with unanimity, maintained that when property is given absolutely, a trust is not lightly to be imposed, upon mere words of request, recommendation, and confidence; and accordingly they have affirmed that such words will be given their ordinary and natural import, and not to be regarded as imperative, unless it is clear that the testator so intended them": 1 Ross on Probate Law and Practice, 76 citing Kaufman v. Gries, 141 Cal. 295, 74 Pac. 846; Estate of Marti, 132 Cal. 665, 61 Pac. 964, 64 Pac. 1071; Estate of Buhrmeister, 1 Cal. App. 80, 81 Pac. 752.

General Requisites of Precatory Terms.—A trust has been declared to be a relation between two persons, by virtue of which one of them (the trustee) holds property for the benefit of the other (the cestui que trust): Corby v. Corby, 85 Mo. 371. But it is not necessary to use the word "trust" or to direct property to be held in trust, since if from the language used, in view of the whole disposition of the estate, an intent and purpose may be reached which implies a trust, a trust will be implied: Cockrill v. Armstrong, 31 Ark. 580; Hughes v. Fitzgerald (Conn.), 60 Atl. 694. Hence, the rule is stated that no particular form of expression is required to create a precatory trust. Words of recommendation, request, entreaty, wish or expectation will impose a binding duty on a devisee or legatee by way of trust provided the testator has pointed out with sufficient clearness and certainty the subject matter and the object of the trust, nor will the fact that the testator's whole estate is disposed of in absolute terms before the precatory words occur in the instrument prevent the trust from attaching: Murphy v. Carlin, 113 Mo. 112, 35 Am. St. Rep. 699, 20 S. W. 786. See, also, Quinn v. Shields, 62 Iowa, 129, 49 Am. Rep. 141, 17 N. W. 437. In other words, the words may be precatory in form but mandatory in effect: Dexter v. Evans, 63 Conn. 58, 38 Am. St. Rep. 336, 27 Atl. 308.

In the leading English case of Knight v. Knight, 3 Beav. 172, the general rule was announced in the following language: "As a general rule, it has been laid down that when property is given clearly to any person, and the same person is by the giver, who has power to command, recommended or entreated or wished to dispose of that property in favor of another, the recommendation or entreaty or wish shall be held to create a trust: First, if the words are so used that, upon the whole, they ought to be construed as imperative; secondly, if the subject of the recommendation or wish be certain; and thirdly, if the objects or persons intended to have the benefit of the recommendation or wish be also certain."

In a comparatively recent case in New Hampshire it was held that precatory words in a will equally with direct fiduciary expres-

sions constitute a trust for the person in whose favor they are used, if from the whole transaction and the words used such a trust may be fairly implied: Foster v. Willson, 68 N. H. 241, 73 Am. St. Rep. 581, 38 Atl. 1003. Likewise it has also been declared that a precatory trust is created where it is clear that on the whole it was the intent of the testator to create a trust by the use of such words, and the words used show with reasonable certainty that the testator intended to control the legatee or devisee in the use and control of the property bequeathed or devised: Knox v. Knox, 59 Wis. 172, 48 Am. Rep. 487, 18 N. W. 155. And in an early case in Pennsylvania (Pennock's Estate, 20 Pa. 268, 59 Am. Dec. 718), it was held that words in a will expressive of desire, recommendation and confidence are not words of technical but of common parlance, and that they are not prima facie sufficient to convert a devise or bequest into a trust, but that such words may amount to a declaration of trust, when it appears from other parts of the will that the testator intended not to commit the estate to the devisee or legatee or the ultimate disposition to his kindness, justice or discretion.

**Necessity that Words have Imperative Meaning.**—In order to create a precatory trust, the words used must be such that it will appear from them that they were intended in an imperative sense, and that both the subject and object of the recommendation or wish is certain: McDuffie v. Montgomery, 128 Fed. 105, citing Cruwys v. Colman, 9 Ves. 323; Bland v. Bland, 2 Cox Ch. 349; Knight v. Knight, 3 Beav. 179; Flint v. Hughes, 6 Beav. 342; Fox v. Fox, 27 Beav. 301; Mills v. Newbury, 112 Ill. 123, 54 Am. Rep. 213; Warner v. Bates, 98 Mass. 274. And to the effect that precatory words must be essentially imperative in their character or use in order to create a trust, see, also, Bristol v. Austin, 40 Conn. 438; Hughes v. Fitzgerald (Conn.), 60 Atl. 694; Bohon v. Barrett's Exr., 79 Ky. 378; Young v. Egan, 10 La. Ann. 415; Knox v. Knox, 59 Wis. 172, 48 Am. Rep. 487, 18 N. W. 155.

In the very recent case of Burnes v. Burnes, 137 Fed. 781, the court, in discussing the necessity for the precatory words to be used in an imperative sense, said: "There is a simple, sure and familiar form of bequest to raise a trust, which consists of a devise to the legatee in trust for the beneficiary, and a failure to use it indicates an intention to avoid the creation of a trust. Words of desire, request, recommendation or confidence in a will, addressed by a testator to a legatee whom he has the power to command, create no trust in favor of the parties recommended, unless (1) the intention of the testator to make the desire, request, recommendation or confidence imperative upon the legatee, so that he shall have no option to comply or to refuse to comply with it, clearly appears from the whole will and the relation and circumstances of the testator when it was made; (2) unless the subject matter of the wish or recommendation is certain; and (3) unless the beneficiaries are clearly designated. When these three conditions exist, a precatory trust may be raised.

The test of the creation of the trust is the clear intention of the testator to imperatively control the conduct of the party to whom the language of the will is addressed by the expression of the wish or desire, and not to commit to his discretion the exercise of the option to comply or to refuse to comply with the wish or suggestion expressed."

But, as was said by the court in Russell v. United States Trust Jo., 127 Fed. 445, "An expression may be imperative in its real meaning, although couched in language which is not imperative in form; and when it appears to have been used in this sense by the testator, the courts will give it due effect. If it is used by way of suggestion, counsel or advice, with a view to influence, but not to direct the discretion of the party, it will not raise a trust. Although a devise or bequest to one person, accompanied by words expressing a wish, entreaty or recommendation that he will apply it in whole or in part to the benefit of others, may create a trust, if the subject and object are sufficiently certain, they will not do so unless the words appear to have been intended by the testator to have been imperative; and when property is given absolutely and without reservation, a trust is not to be lightly imposed upon mere words of recommendation and confidence. These propositions are familiar in the law of recommendatory trusts, but in applying them the courts have sometimes implied and sometimes negatived the existence of a trust from the use of the same or equivalent terms, according to the light thrown on the intention of the testator by the various provisions of the will, and by such extraneous facts as have been considered material in interpreting them."

**Necessity that Words be Certain as to Both the Subject and Object of Trust.**—As has been seen from the foregoing section, besides the necessity for the precatory language to be imperative in effect, it is also essential in order to create a precatory trust that the precatory words point out with clearness and certainty both the object of the intended trust and the subject matter upon which it is to operate: Harper v. Phelps, 21 Conn. 257; Lines v. Darden, 5 Fla. 51; Handley v. Wrightson, 60 Md. 198; Hess v. Sinler, 114 Mass. 56; Lucas v. Lockhart, 10 Smedes & M. 466, 48 Am. Dec. 766; Noe v. Kern, 93 Mo. 367, 3 Am. St. Rep. 544, 6 S. W. 239; Trustees of McIntire Poor School v. Zanesville Canal etc. Co., 9 Ohio, 203, 34 Am. Dec. 436; Harrison v. Harrison's Admx., 2 Gratt. 1, 44 Am. Dec. 365.

The rule has, of course, been exemplified in many cases. Thus where an olographic will, after a devise of all the estate to the wife, provided: "If she find it always convenient . . . . to give my brother E. W., during his life, the interest on $10,000 (or $700 per annum), I wish it to be done," it was held that the provision did not refer to the choice or preference of the devisee, but to her pecuniary condition each year, and hence that the intent of the testator was to charge the annuity upon the devise to the wife, provided that the payment in any year would occasion her no incon-

venience: Phillips v. Phillips, 112 N. Y. 197, 8 Am. St. Rep. 737, 19 N. E. 411. And that a precatory trust is created by a clause in a will stating: "It is my wish and desire that my wife continue to provide for the care, comfort and education of T. J. M., now aged nearly five years, who has been raised as a member of my family since his infancy, and to make suitable provision for him in case of her death, providing that he continue to be a dutiful child to her and shows himself worthy of consideration": Murphy v. Carlin, 113 Mo. 112, 35 Am. St. Rep. 699, 20 S. W. 786. And where, by a will, the wife was requested to pay a niece of the testator out of the residuary estate bequeathed to the wife, so much as she shall from time to time think best for the support and benefit of the niece, it was held that the court could ascertain the amount and decree the payment of a reasonable sum for such purpose where the wife fails to honestly and fairly exercise her discretion in the matter: Collister v. Fassitt, 163 N. Y. 281, 79 Am. St. Rep. 586, 57 N. E. 490. But it was held in Howard v. Carusi, 109 U. S. 725, 3 Sup. Ct. 575, 27 L. Ed. 1089, that a devise of real estate and a bequest of personal property "to my brother S. C., to be held, used and enjoyed by him, his heirs, executors, administrators and assigns forever, with the hope and trust, however, that he will not diminish the same to a greater extent than may be necessary for his comfortable support and maintenance, and that at his death the same, or so much thereof as he shall not have disposed of by devise or sale, shall descend to my three beloved nieces," naming them, creates no trust, executory or otherwise.

**Distinction Between Precatory and Discretionary Trust.**—From what has been said in the preceding part of this note, it will be observed that a precatory trust is merely a trust created by the use of precatory terms. Whether the precatory terms are sufficient to create a trust is simply a matter of construction of the precatory terms employed, in connection with the whole context of the will. The mode of carrying out the trust created by the employment of such precatory terms may be either mandatory or discretionary in the same manner as a trust created by terms other than precatory might be either mandatory or discretionary. It is of course, true that it may sometimes be difficult to determine whether the mode of carrying out a trust created by precatory terms is mandatory or discretionary, but that circumstance arises merely as a result of the employment of the recommendatory terms creating the trust, and not from any inherent quality of precatory trusts. A precatory trust, when its existence is once ascertained by the court, is enforceable in the same manner as any other trust is enforceable. It is the creation of the precatory trust itself, which must not be left to the discretion of the legatee or devisee, who is claimed to hold as a trustee and not the mode of enforcing the trust.

.Post v. Moore, 181 N. Y. 15, 106 Am. St. Rep. 495, 73 N. E. 482, Collister v. Fassitt, 163 N. Y. 281, 79 Am. St. Rep. 586, 57 N. E. 490,

and McCurdy's Appeal, 124 Pa. 99, 10 Am. St. Rep. 575, 16 Atl. 626, illustrate to some extent the distinction above stated.

**Necessity for All Parts of the Will to be Considered.**—The object of a judicial interpretation of a will is to ascertain the intention of the testator according to the meaning of the words he has used, deduced from a consideration of the whole instrument and a comparison of its various parts in the light of the situation and circumstances which surround the testator when the instrument was framed: Colton v. Colton, 127 U. S. 300, 8 Sup. Ct. 1164, 32 L. Ed. 138; Kauffman v. Gries, 141 Cal. 295, 74 Pac. 846; Murphy v. Carlin, 113 Mo. 112, 35 Am. St. Rep. 699, 20 S. W. 786. Hence it follows that in the construction of precatory terms, as in the construction of any part of a will, all the provisions and parts of the will must be considered in order to ascertain whether the precatory words are used with an intent of creating a trust: Dexter v. Evans, 63 Conn. 58, 38 Am. St. Rep. 336, 27 Atl. 308; Ducker v. Burnham, 146 Ill. 9, 37 Am. St. Rep. 135, 34 N. E. 558; Negro Chase v. Plummer, 17 Md. 165; Carter v. Gray, 58 N. J. Eq. 411, 43 Atl. 711; Wood v. Seward, 4 Redf. Sur. 271; Cook v. Ellington, 6 Jones Eq. 371; Pennock's Estate, 20 Pa. 268, 59 Am. Dec. 718; In re Boiss' Estate, 177 Pa. 190, 35 Atl. 724; Hill v. Page (Tenn.), 36 S. W. 735. And it was held in Pennsylvania that mere precatory words or words of command or of explanation in a will are not enough to create a trust or to establish an intention not to be gathered from a consideration of the operative words upon the face of the instrument, or, in other words, that the intent of the testator to create a trust must be apparent from the face of the will: Boyle v. Boyle, 152 Pa. 108, 34 Am. St. Rep. 629, 25 Atl. 494. Consequently, in ascertaining whether the testator intended to create a trust, the codicil may also be considered: Wood v. Camden Safe Deposit etc. Co., 44 N. J. Eq. 460, 14 Atl. 885; In re Keleman, 126 N. Y. 73, 26 N. E. 968; Cook v. Ellington, 6 Jones Eq. 371. And likewise it has been held that for the purpose of ascertaining the testator's intent the whole will must be considered, including provisions admitted to be void: Tilden v. Green, 130 N. Y. 29, 27 Am. St. Rep. 487, 28 N. E. 880. But it is said that in the construction of wills, the law in doubtful cases leans in favor of an absolute rather than a defeasible estate, of a vested rather than a contingent one, and of a distribution as nearly in accord with the general rules of inheritance as is possible: Patton v. Ludington, 103 Wis. 629, 74 Am. St. Rep. 910, 79 N. W. 1073.

**Meaning to be Given to the Precatory Words.**—In determining whether words used in a will are used simply as a suggestion or recommendation which may be obeyed or not obeyed, or as imposing a duty upon the legatee or devisee, the precatory words are to be understood in their natural and familiar sense: Ellis v. Ellis' Admr., 15 Ala. 296, 50 Am. Dec. 132; McRee's Admr. v. Means, 34 Ala. 349.

But, of course, the words must be construed in connection with the whole will. Thus in Good v. Fichthorn, 144 Pa. 287, 27 Am. St.

Rep. 630, 22 Atl. 1032, the court said: "The true test of the effect of language at variance with other parts of the devise is, whether the intent is to give a smaller estate than the meaning of the words of the gift standing alone would import, or to impose restraints upon the estate given. The former is always lawful and effective; the latter rarely, if ever; the first, because the testator's intention is the governing consideration in the construction and carrying out of a will; the second, because even a clear intention of the testator cannot be permitted to contravene the settled rules of law by depriving any estate of its essential legal attributes.

"Applying this principle to the present case, it is clear, as already said, that the testator gave a fee simple absolute to his widow, repeated and reiterated, as if he wished to put it beyond all question. But it is also clear that he still thought it necessary, or at least permissible, for him to prescribe how it should be used. There-fore, he gives her all the rights and powers over it that he had while living, and in addition specifies the right to sell and convey, to make title, to use the proceeds, and lastly, as an adjunct to the will whose making he enjoins, 'the power and authority' to appoint one or two executors, as she may deem proper. It is true that the words he uses in regard to the making of her will, 'enjoin and direct,' are in their natural meaning mandatory and imperative; but coming as they do at the end, and in connection with the express enumeration of useless and superfluous powers, they indicate an intent to grant or withhold incidents of the estate already given."

**Construction Given Various Precatory Terms in Common Use.—** The various apparently inconsistent decisions construing precatory words spring from the difference in the order of expression and the surroundings, which are seldom the same in any two cases; hence it is often said that every case must depend upon the construction of the particular word under consideration: Bohon v. Barrett's Admr., 79 Ky. 378. Or, in other words, the difficulty with respect to precatory trusts is not as to what the rule is, but as to its application in the particular case on considering the whole will in that connection: Noe v. Kern, 93 Mo. 373, 3 Am. St. Rep. 544, 6 S. W. 239.

Hence no general rule can be laid down as to the construction of such precatory words as "wish," "desire," "recommend," "request" and the like, since the meaning to be given to such words depends entirely upon the manner in which they are used in connection with the other phraseology of the will.

In Bacon v. Ransom, 139 Mass. 117, 29 N. E. 473, the court observed that a request made by one who has the right to direct is often, perhaps generally, interpreted as a command. So, also, it is said that express words are not necessary to create a trust by will, since, if from the language used, in view of the whole disposition of the estate, such an intention is manifest, a trust will be implied. The terms "wish and desire" may be sufficient: Cockrill v. Armstrong, 31 Ark. 580.

The use of the words "wish and will," and especially the word "will," were discussed quite elaborately by the court in McRee's Admr. v. Means, 34 Ala. 349. The court in that case said: "'Will' is sometimes used as the synonym of choice, wish, pleasure; but it is also used frequently in the sense of command, direction, determination and resolution. It has, when found in testamentary papers, a universally received mandatory signification. Swinburne's definition of a testament is 'a just sentence of our will, touching that we would have done after our death': 1 Swinburne on Wills, 4. Again, the same author says (page 19), 'the will or meaning of the testator is the queen or empress of the testament.' The same definition is also given by other authors: 10 Bacon's Abridgment, 479; Bouvier's Law Dictionary.

"In Gilbert v. Chapin, 19 Conn. 351, the word 'will' is used in contradistinction to precatory language, as will be seen by the following quotations: 'It is said that precatory language, or words of recommendation, are expressive of a testator's will and intention. It is true that such forms of expression declare a wish, a preference, but not a will in its appropriate sense. They express an intention, or rather a desire, not absolutely but with a qualification or condition that such desire shall nevertheless be subject to the future discretion and action of the devisee. And the distinction between this and an imperative direction, which, in legal parlance, is a will, is very intelligible and clear.' This extract indicates an opinion of the Connecticut court that 'will' is the antithesis of words of recommendation and request, not creating a trust, and carries with its use an imperative direction.

"The same meaning has also been attributed to the word in South Carolina where it is spoken of and distinguished from 'wish': Brunson v. King, 2 Hill Eq. (S. C.), 490. Chief Justice Marshall had the same view of the import of the word, for he said: 'The first and great rule in the exposition of wills, to which all other rules must bend, is that the intention of the testator, expressed in his will, shall prevail, provided it be consistent with the rules of law. This principle is generally asserted in the construction of every testamentary disposition. It is emphatically the will of the person who makes it, and is defined to be the declaration of a man's intentions, which he wills to be performed after its [his] death': 6 Bacon's Abridgment, 16; also, 2 Blackstone's Commentaries, 499; Eels v. England, 2 Vern. 466; Forbes v. Ball, 3 Mer. 436.

"The common acceptation of the word 'will' corresponds with the meaning adopted by law-writers. There is no other word of more common and familiar use to describe the mental operation involved in the act of making a bequest of property. While the books abound in cases where words less imperative than will have been held to create trusts, we have not found, and the industry of counsel has not produced, a single case in which 'will' has not been treated as mandatory. The word 'will,' we decide, therefore, ex

vi termini imports an obligatory direction by the testatrix.'' The court then held that the words ''wish and will'' had an imperative effect.

But in Lines v. Darden, 5 Fla. 51, the court, in discussing the effect of the words ''will and desire'' said: ''The words 'will and desire' when addressed to an executor, are, as contended, imperative, and it is his duty to carry out the wishes of his testator, if possible, and when consistent with the will. The words are not necessarily adressed to the executor. The object to be performed will usually afford a safe guide in determining to whom they are addressed.''

There are, however, numerous decisions in which the precatory words in common use have been construed, but such decisions can only, as a general rule, be of aid where the context is quite similar.

Thus, in Re Whitcomb, 86 Cal. 265, 24 Pac. 1028, the word ''recommend'' was construed as having been used in a strictly precatory character, with no imperative effect, while in Eberhardt v. Perolin, 48 N. J. Eq. 592, 23 Atl. 501, the same word was given an imperative effect.

In McCurdy v. McCallum, 186 Mass. 464, 72 N. E. 75, it was said that under the law of England the word ''request,'' when used in a will, may be construed to be either mandatory or directory, depending upon the intent as gathered from the whole will, and it was construed in that case as creating a trust.

And in Colton v. Colton, 127 U. S. 300, 8 Sup. Ct. 1164, 32 L. Ed. 138, the court observed: ''It is an error to suppose that the word 'request' necessarily imports an option to refuse, and excludes the idea of obedience as corresponding duty. If a testator requests his executor to pay a given sum to a particular person the legacy would be complete and recoverable. According to its context and manifest use, an expression of desire or wish will often be equivalent to a positive direction, where that is the evident purpose and meaning of the testator; as where a testator desired that all his just debts, and those of a firm for which he was not liable, should be paid as soon as convenient after his decease, it was construed to operate as a legacy in favor of the creditors of the latter: Burt v. Herron, 66 Pa. (16 P. F. Smith) 400. And in such a case as the present, it would be but natural for the testator to suppose that a request, which, in its terms, implied no alternative, addressed to his widow and principal legatee, would be understood and obeyed as strictly as though it were couched in the language of direction and command. In such a case, according to the phrase of Lord Loughborough in Malim v. Keighley, 2 Ves. Jr. 333, 529, 'the mode is only civility.' '' The clause of the will under consideration in the above case was, ''I give and bequeath to my wife, E. W. C., all of the estate, real and personal, of which I shall die seised, possessed or entitled to. I recommend to her the care and protection of my mother.

and sister, and request her to make such gift and provision for them
as in her judgment will be best.''

The word ''request'' was construed in Barry v. Sturdivant, 53
Miss. 491; Schmucker v. Reel, 61 Mo. 592; Eddy's Exr. v. Harts-
horne, 34 N. J. Eq. 419; Foose v. Whitmore, 82 N. Y. 405, 37 Am.
Rep. 572; Wyman v. Woodbury, 86 Hun, 277, 33 N. Y. Supp. 217;
Batchelor v. Macon, 69 N. C. 545. And the precatory words ''re-
quest and desire'' in Williams v. Worthington, 49 Md. 572, 33 Am.
Rep. 286; the words ''requested and intrusted'' in Spurgeon v.
Scheible, 43 Ind. 216; the words ''will and desire'' in Lines v.
Darden, 5 Fla. 51; Cate v. Cranor, 30 Ind. 292; Reid v. Porter, 54
Mo. 265; Collins v. Hope, 20 Ohio, 492; McMurry v. Stanley, 69
Tex. 227, 6 S. W. 412; the words ''wish and will'' in McRee v.
Means, 34 Ala. 349; the words ''wish and desire'' in Phebe v. Quil-
lin, 21 Ark. 490; Cockrill v. Armstrong, 31 Ark. 580; Cobb v. Battle,
34 Ga. 458; Barrett v. Marsh, 126 Mass. 213; Brasher v. Marsh, 15
Ohio St. 103; the words ''desire and request'' in Kauffman v. Griess,
141 Cal. 295, 74 Pac. 846; the words ''enjoin and direct'' in Good
v. Fichthorn, 144 Pa. 287, 27 Am. St. Rep. 630, 22 Atl. 1032; the
words ''on the trust and confidence'' in People v. Powers, 147 N. Y.
104, 41 N. E. 432, 35 L. R. A. 502.

Although the word ''wish'' is a distinctly precatory term, still
it very often is used in an imperative sense.    The court, in Russell
v. United States Trust Co., 127 Fed. 445, in construing the word
''wish'' said: ''The present case differs primarily from either of
these cases, because the testator did not 'request' or 'direct' his
wife, in referring to the future disposition of the property left to
her. But this consideration is of little importance. Undoubtedly
the word 'wish' may be equivalent to 'will' or 'request' or 'direct,'
if the context justifies that meaning: Bliven v. Seymour, 88 N. Y.
469.  In Phillips v. Phillips, 112 N. Y. 197, 8 Am. St. Rep. 739, 19
N. E. 411, it was given that meaning.  But in both of these cases
the context authorized the implication that it was used imperatively.
So, also, the word 'wish' may be equivalent to 'request'; but the
meaning of the word 'request,' standing alone, is indeterminate and
depends altogether upon the context: Foose v. Whitmore, 82 N. Y.
405, 37 Am. Rep. 572. Except that in this case, as in all of these
cited, the testator used a word which may be regarded as impera-
tive or as not imperative, these authorities do not assist the present
decision. The testator's expression of a 'wish and expectation' that
his wife should 'generously remember' his brother's children and
'such others as she may choose' when she should make her will is
one of hope and confidence rather than of command. That he did
not intend to use it in an imperative sense appears from the con-
text, and the provision for the mother denotes the distinction which
existed in his mind between words of command and words of recom-
mendation. When he proposes to provide for his mother he 're-
quests his wife to pay to her or her caretaker an ascertainable

sum—such sum or sums as may be requisite for her every comfort.' This part of the clause may very properly be read as imperative. But when he refers to the persons mentioned in the latter part of the clause, he substitutes for the word 'request' the words 'my wish and expectation'—words which are calculated to appeal to her judgment rather than to coerce it. More significant, as indicating that he did not intend by these words to dictate the action of his wife, is the circumstance that he applies them alike to the children of the deceased brother and to 'such others as she may choose.' If the will had read, 'I request [or direct] my wife by her will to generously remember my deceased brother's children and such others as she may choose,' the wide latitude of discretion given to her would be quite inconsistent with an intention to dictate or command. As it does read, the language is more clearly indicative merely of suggestion and preference. It falls short of denoting any definite disposing intention in favor of the persons mentioned.''

For instances where the word ''wish'' was construed as having been used in a mandatory sense, see Phebe v. Quillin, 21 Ark. 490; Bohon v. Barrett's Exr., 79 Ky. 378; Curd v. Field, 103 Ky. 293, 45 S. W. 92; Pratt v. Trustees etc., 88 Md. 610, 42 Atl. 51; Bliven v. Seymour, 88 N. Y. 469; Phillips v. Phillips, 112 N. Y. 197, 8 Am. St. Rep. 737, 19 N. E. 411; Meehan v. Brennan, 16 App. Div. 395, 45 N. Y. Supp. 57; Cook v. Ellington, 6 Jones Eq. 371; Brasher v. Marsh, 15 Ohio St. 103; Appeal of Fox, 99 Pa. 282; In re Gaston's Estate, 188 Pa. 374, 68 Am. St. Rep. 874, 41 Atl. 529.

And for instances where the word ''wish'' was construed as having been used in a precatory sense, see Nunn v. O'Brien, 83 Md. 198, 34 Atl. 244; Manners v. Philadelphia Library Co., 93 Pa. 165, 39 Am. Rep. 741; Brunson v. King, 2 Hill Eq. (S. C.) 483.

The words ''wish,'' ''desire,'' ''command'' or ''direct'' are said to be apt words in a will to show the intent of the testator to make a will: Barney v. Hayes, 11 Mont. 571, 28 Am. St. Rep. 495, 29 Pac. 282. But of course the expression of a ''desire'' that the one to whom a bequest is made shall make a certain testamentary disposition of part of the bequest may fall short of a ''command or direction,'' and have merely a precatory effect: Estate of Marti, 132 Cal. 666, 61 Pac. 964, 64 Pac. 1071. But the word ''desire'' is frequently used in a will with the intent of indicating a positive direction: See. Weber v. Bryant, 161 Mass. 400, 37 N. E. 203; Wood v. Camden etc. Co., 44 N. J. Eq. 460, 14 Atl. 885; Stewart v. Stewart, 61 N. J. Eq. 25, 47 Atl. 633; Meehan v. Brennan, 16 App. Div. 395, 45 N. Y. Supp. 57; Appeal of Philadelphia, 112 Pa. 470, 4 Atl. 4; Oyster v. Knull, 137 Pa. 448, 21 Am. St. Rep. 890, 20 Atl. 624. And likewise the word ''desire'' has been used in many instances for the purpose of creating a trust: See Cockrill v. Armstrong, 31 Ark. 580; Major v. Herndon, 78 Ky. 123; Maught v. Getzendanner, 65 Md. 527, 57 Am. Rep. 331, 5 Atl. 471; Van Dyck v. Van Beuren, 1 Caines, 84; Riker v. Leo, 115 N. Y. 93, 21 N. E. 719.

The term "requiring" was construed as creating a trust in Curd v. Field, 103 Ky. 293, 45 S. W. 92.

**Effect of Words Indicating Merely Motive of Testator in Making Gift.**—No trust can be implied merely from words indicating the motive which induced the testator in making the gift: Randall v. Randall, 135 Ill. 398, 25 Am. St. Rep. 373, 25 N. E. 780; Small v. Field, 102 Mo. 105, 14 S. W. 815. The application of the rule just stated arises in those cases where a devise is made to one standing in the relation of a parent, and makes some recommendation or request touching the maintenance of children, since such a recommendation or request relates, as a general rule, to the motive of the testator: Elliott v. Elliott, 117 Ind. 380, 10 Am. St. Rep. 54, 20 N. E. 264; Seamonds v. Hodge, 36 W. Va. 304, 32 Am. St. Rep. 854, 15 S. E. 156.

**Effect of Words as Courteous Command When Addressed to Near Relatives or Intimate Friends.**—Very often a testator, in formulating an imperative direction in a will, employs courteous precatory terms from a sense of delicacy when addressing such directions toward his wife or some near relative, but in such cases the context will generally show that an imperative direction was intended. It is quite likely that the doctrine of precatory trusts originally arose through an extensive use of such courteous forms of commands.

The Kentucky court, in Bohon v. Barrett's Exr., 79 Ky. 378, in construing certain courteous language of a precatory character to amount to a trust, adverted to the reasons for the use of such language. That chivalrous court observed: "The language employed in defining the discretion of his brother is somewhat obscure and indirect, resulting from an attempt by the testator to maintain through his language a refined respect for his feelings, amounting almost to sentimentalism. A peculiar and sacred confidence must be presumed to have existed between them."

And in referring to the absence of specific directions the court said: "It requires no romantic stretch of the imagination to account for the use of general terms and the nonexpression of the particulars of the delicate confidence of brothers, born of the same mother, reared around the same fireside, and in manhood associated under the same roof until one is taken and the other left.

"And in view of their relations and the peculiar language of the will, which exalt this trust high above the usually guarded trusts, the slightest wish of the testator should be binding upon the conscience of his brother."

And in Murphy v. Carlin, 113 Mo. 112, 35 Am. St. Rep. 699, 20 S. W. 786, the court, in construing the effect of the words "wish and desire," said: "In considering this question it is to be remembered that the devisee is the wife of the testator, between whom it is not expected that commands would be expressed in such forcible language as between strangers: Warner v. Bates, 98 Mass. 274; Knox v. Knox, 59 Wis. 172, 48 Am. Rep. 487, 18 N. W. 155."

Likewise in Re Whitcomb, 86 Cal. 265, 24 Pac. 1028, the court adverted to the fact that the word "recommend," when used toward a wife, might have a more binding force than when used toward an executor.

But in Mitchell v. Mitchell, 143 Ind. 113, 42 N. E. 465, the court, in adverting to the use of precatory language toward a wife tending to limit the estate devised, said: "Nor is it doubted that it was within the power of the testator to place such a limitation upon the apparent devise in fee simple as to charge it with a trust in favor of another than the immediate devisee. Neither is it questioned that such a limitation might have been made in words not so full of harsh command, when addressed to his wife, as would seem neither rude nor inconsiderate if addressed to an executor or another not sustaining a relationship so near and sacred as that of wife. But we do not understand that language addressed to the wife, in form and substance advisory, will be construed as a command, simply because the relationship not only admits of, but would seem to suggest, words of tenderness and civility, when such construction would radically qualify other and clearly expressed purposes of the testator, and set at naught any of the other well-recognized canons of construction.

"In addition to the admitted rules of construction above stated, there is one fully settled in this state, that a devise in fee, clearly and distinctly made, cannot be taken away, cut down or modified by subsequent words not clearly and distinctly manifesting the testator's intention to limit such devise: Orth v. Orth, 145 Ind. 184, 57 Am. St. Rep. 185, 32 L. R. A. 298, 42 N. E. 277, 44 N. E. 17; Ross v. Ross, 135 Ind. 367, 35 N. E. 9; O'Boyle v. Thomas, 116 Ind. 243, 19 N. E. 112; Bailey v. Sanger, 108 Ind. 264, 9 N. E. 159."

**Effect of Words Addressed to an Executor.**—In an early case in New Hampshire, that of Erickson v. Willard, 1 N. H. 217, the court observed: "The words 'desire,' 'request,' 'recommend,' 'hope,' 'not doubting' that the executor will conduct in a specified manner, when they come from a testator who has the power to command, are to be construed as commands clothed merely in the language of civility, and they impose on the executor a duty which courts have in repeated instances enforced." And see, also, Van Duyne v. Van Duyne, 14 N. J. Eq. 397, where the distinction as to the use of precatory terms addressed to a devisee and when addressed toward an executor is also recognized. And in Estate of Marti, 132 Cal. 666, 61 Pac. 964, 64 Pac. 1071, the court, in discussing the effect of the word "desire" addressed toward the wife, who was named as his devisee, observed that "while the desire of a testator for the disposition of his estate will be construed as a command when addressed to his executor, it will not, when addressed to his legatee, be construed as a limitation upon the estate or interest which he has given to him in absolute terms."

**Effect of Words as Mere Suggestion to Influence Discretion.**—As we have seen before, words indicating merely a wish or recommendation, and appealing to the discretion of a legatee, impose no legal obligation on him in favor of the person in whose behalf the words are used: Wilde v. Smith, 2 Dem. Sur. 93. Likewise a clause in a will stating that the testator would like his estate kept in a certain place, and as it was at his death, is held not to impose any duty: Angus v. Noble, 73 Conn. 56, 46 Atl. 278.

**Effect of Words as Dependent upon Status or Education of Testator.** It would seem that it would be a circumstance to aid in the construction of a will that the will was an olographic one drawn by a testator unfamiliar with the meaning of the language employed by him, or, on the other hand, that the will was drawn by a lawyer who was familiar with the meaning of the language employed in the framing of the will.

This idea was considered of some weight in Eberhardt v. Perolin, 48 N. J. Eq. 592, 23 Atl. 501. In that case the court observed: "In the first place, the additional circumstances are to be noted that the will is an olograph, by a Frenchman who is plainly deficient in orthography and ability to properly · punctuate his sentences and use capital letters, although his production, in many respects, exhibits intelligence and considerable thought, and also that, in the portion of the will which is offered for construction, he has plainly interlined immediately after the word 'instrument' at the end of the provision for the increase of the legacy to the Presbyterian church, ᴠthese words, 'and her Plaisure if she My Wife feel dispose to do so but it is not obligatory,' following which, without intervening punctuation, are the words, 'Also to increase the donation,' etc., the word 'also' commencing with a capital 'A.' Upon a close inspection of the original will with the aid of a magnifying glass, I am satisfied that a long downward stroke, by way of punctuation, originally followed the word 'instrument,' but that when the interlineation was made it was written over in such a way as to make it run into, or constitute part of, the letter 'b' in the word 'obligatory.' " And in referring to certain words used by the testator in the precatory clauses of the will, the court further observed: "It is to be remembered that Vinot was born and reared in France, and that the English language was consequently not his native tongue. Many indications of his proneness to adopt his native language, a fact significant of his lack of familiarity with English, appear in his will. Under the circumstances we must not too readily assume that he meant to use the Saxon word 'gift' in its exact sense."

And in Re Whitcomb, 86 Cal. 265, 24 Pac. 1028, the will was an olographic one. The court, in construing the precatory clauses of the will, seemed to place some weight upon the fact that the testator was a lawyer and understood fully what language was necessary to vest a trust estate.

And in Sale v. Thornberry, 86 Ky. 266, 5 S. W. 468, the court adverted to the fact that the testator was a lawyer, but it does not appear whether the will was olographic.

**Effect of Varied Use of Words in Different Parts of Will.**—As has been stated before, the whole context of the will is to be considered in construing the effect of the various precatory terms employed in the will.

The general rule as to the construction of precatory words was stated by the court in Stewart v. Stewart, 61 N. J. Eq. 25, 47 Atl. 633, in construing the word "desire." The court said: "The rule that words occurring more than once in a will shall be presumed to be used always in the same sense unless a contrary intention appear by the context, or unless the words be applied to a different subject, laid down by Mr. Jarman (3 Jarman on Wills (R. & T.), 707), is founded on reason, and is in accord with the fundamental rule which requires us to seek from the language of a will the intent of the testator. There is nothing in the context to indicate that 'desire' was used in paragraph 3 in a different sense from that clearly indicated by its use in paragraph 4 and paragraph 7. In every case the word is applied to the same subject matter, that is, the disposition of parts of testator's estate. It follows, in my judgment, that 'desire' in paragraph 3 bears the sense of 'I direct,' as it evidently does in paragraphs 4 and 7."

Likewise in Russell v. United States Trust Co., 136 Fed. 758, the court placed considerable weight upon the fact that different phraseology was used in different parts of the will. It said: "Where the whole instrument is considered, it is apparent that the testator has chosen different forms of expression for different objects, and it is fair to assume that his choice was intelligent. To his wife and daughter he wills and bequeaths two-thirds and one-third, respectively, of his real and personal property. When he is providing for the support of his mother and sister—an obligation to be immediately assumed—he, with full confidence, requests. When he refers to generous remembrance of the children of his brothers and others, such remembrance to find expression at some time in the future, which may be remote, he says, 'it is my wish and expectation.' Why did he change the form of expression? Why did he not with full confidence request that such remembrance be made? 'Wish and expectation' import hope, and 'hope' presupposes the possibility of disappointment. If the change of language was made with an intelligent purpose, it would seem that such purpose contemplated that over the wished-for remembrance of the nephews the sound discretion of the wife was to be more fully exercised than over the provision for the support of mother and sister. It may be that a disclosure of all the surrounding circumstances might induce a court to construe the words 'wish and expectation' as complainant contends they should be, but with nothing but the will before us, they cannot be given such meaning."

**Effect Where Meaning of Precatory Words is Doubtful.**—If there is doubt whether a testator intended by words of advise or recommendation to narrow an otherwise free and unfettered devise or bequest, the courts incline in favor of the absolute title of the devisee or legatee: Orth v. Orth, 145 Ind. 184, 57 Am. St. Rep. 185, 42 N. E. 277, 44 N. E. 17, 32 L. R. A. 298. See, also, Barrett v. Marsh, 126 Mass. 213, to the same effect.

**Effect Where Precatory Words Follow an Absolute Bequest or Devise.**—It is stated that a devise in fee, clearly and distinctly made, cannot be taken away, cut down or modified by subsequent words not clearly and distinctly manifesting the testator's intention to limit such devise: Mitchell v. Mitchell, 143 Ind. 133, 42 N. E. 465; Second Reformed etc. Church v. Disbrow, 52 Pa. 219.

And with respect to the use of precatory words or clauses immediately following an absolute disposition, the rule seems to be that the precatory words, under such circumstances, do not create a trust: Williams v. Worthington, 49 Md. 572, 33 Am. Rep. 286; Durant v. Smith, 159 Mass. 229, 34 N. E. 190; First Presbyterian Church v. McKallor, 35 App. Div. 98, 54 N. Y. Supp. 740.

This rule was followed in Post v. Moore, 181 N. Y. 15, 106 Am. St. Rep. 495, 73 N. E. 482, where it was held if a will purports to devise all the testator's property to his widow, to have and to hold to her and her heirs and assigns forever, but states that it is testator's will and desire that she shall pay the sum of $300 a year to his sister in law, no trust or power in trust is created in favor of the sister in law thereby.

So, also, it is said that where full discretion is clearly given to the legatee, the use of precatory words will not create a trust: Corby v. Corby, 85 Mo. 371. Hence the rule has also been stated that although expressions of a desire or a wish of the testator as to a specific disposition of his property, standing alone by themselves, may create a valid devise or bequest, still the rule is different where such expressions are employed after an absolute disposition of the property has been made: Hopkins v. Glunt, 111 Pa. 287, 2 Atl. 183.

The case of Kauffman v. Gries, 141 Cal. 295, 74 Pac. 846, was an instance where a wife devised land to her husband in fee simple with an expression of "desire" and "request" that he should convey it to a Masonic lodge "in such manner and at such times as he may deem best," was held not to import a trust on behalf of the lodge.

And where a will, which after disposing of the residuary estate to the husband "absolutely" expresses a wish that he shall arrange his affairs so at his death "whatever may remain" of his property will go to the son of the testatrix, it was held not to create a precatory trust: Nunn v. O'Brien, 83 Md. 198, 34 Atl. 244.

And where a will bequeathed a certain sum to two women as their absolute property, followed by a provision, "I request said Susan and Lucy to use said fund thus given to further what is called to Woman's Rights Cause. But neither of them is under any legal re-

sponsibility to anyone or any court to do so," it was held that no trust was created: Bacon v. Ransom, 139 Mass. 117, 29 N. E. 473.

And likewise it was held that no trust was created where the estate was given to two youngest sons in fee simple, with a clause stating that "In making this disposition of my property I assume that my oldest son will understand and appreciate my reason for giving whatever property I may have had at my disposal to his younger brothers; and that they, on their part, will not fail to do for him and his family, all that, under the circumstances, the truest fraternal regard may require them to do": Rose v. Porter, 141 Mass. 309, 5 N. E. 641.

So, also, where it is apparent from the language of a will that it was the testator's intention to vest a fee in his daughters as to certain real estate, this intention is not to be controlled by the expression of a wish that the husbands of his daughters should not control the inheritance: Ringe v. Kellner, 99 Pa. 460. And where a father, by a clause in his will, gives his daughter $10,000 and by another clause states that it is his "wish and desire" that she shall not consume the principal, but that at her death it shall go to certain devisees, it was held that the precatory clause did not limit the absolute gift to one for life only: In re Heck's Estate, 170 Pa. 232, 32 Atl. 413. And where a will gave the residuary estate to the wife "absolutely," with a request that she give to their son a certain sum or any sum she might think best, and also accompanied by a clause providing "I further request that she, my said wife, shall assist any of my brothers and sisters if they should be in need, and at her decease she should divide her property among them as she may think best," the court held that the precatory clauses created no trust in favor of the brothers and sisters: McDuffie v. Montgomery, 128 Fed. 105.

But it was held in a Missouri case that a precatory trust may be attached to property devised to another absolutely, provided that the intention to so change it appears from the will: Noe v. Kern, 93 Mo. 367, 3 Am. St. Rep. 544, 6 S. W. 239. And in an early case in Mississippi it was stated that though the language of a will may make an absolute gift, yet if other appropriate expressions be used which show with sufficient certainty that but a qualified gift was intended, a court of equity will look to the clear intent of the testator and raise a constructive trust where none had been expressly declared, but it also laid great stress upon the point that to raise a precatory trust the words of recommendation or of hope used by the testator must be certain both with respect to the object and subject of the intended trust: Lucas v. Lockhart, 10 Smedes & M. 466, 48 Am. Dec. 766. And in this connection see, also, Pennock's Estate, 20 Pa. 268, 59 Am. Dec. 718.

And in Knox v. Knox, 59 Wis. 172, 48 Am. Rep. 487, 18 N. W. 155, the will contained a clause stating, "I give, devise and bequeath unto my wife M., her heirs and assigns, forever, all my real and personal estate, . . . . having full confidence in my said wife, and

hereby request that at her death, she will divide equally, share and share alike, in equal portions, as tenants in common between my sons and daughters [naming them] all the proceeds of my said property, real and personal, goods and chattels hereby bequeathed.'' The court, after an elaborate discussion of the subject, held that the widow obtained under the will a life estate coupled with a trust as to the remainder in favor of the children.

**Effect Where Testator Declares that No Trust is Created by the Terms Used.**—The rule seems to be that however strange the precatory language may be, that the courts will not construe it to create a precatory trust where the testator expressly declares that his precatory language is not intended to create a trust: Ender's Exr. v. Tar Co., 89 Ky. 17, 11 S. W. 818; Wood v. Seward, 4 Redf. Sur. 271; In re Havens, 6 Dem. Sur. 456; Fairchild v. Edson, 154 N. Y. 199, 61 Am. St. Rep. 609, 48 N. E. 541; Toms v. Owen, 52 Fed. 417; Burnes v. Burnes, 137 Fed. 781.

**Precatory Clauses Relative to Persons Occupying Various Relations Toward the Testator.**—Inasmuch as the decisions construing particular precatory terms and clauses are of controlling weight only when there is a striking similarity of the terms or clauses construed, and inasmuch as there may be a certain amount of similarity in all cases wherein the precatory terms or clauses were employed in behalf of persons occupying a similar state of relationship toward the testator, we have grouped the cases with respect to their reference to the persons upon whose behalf the terms or clauses were used.

**Parents.**—A clause in a will stating that ''my mother is to have $150 out of my estate annually as long as she lives and that she remain with my wife during the remainder of her life,'' imposes no charge upon testator's estate for the board of his mother: Martin v. Goode, 111 N. C. 288, 32 Am. St. Rep. 799, 16 S. E. 232. But if there is expressed a ''wish and desire'' in the will of a deceased wife that her aged, infirm and dependent father should, in case of need, be provided with a home and maintenance by her husband, the intention of the testatrix to provide for the maintenance of her father is apparent, and it must be held that the devise to the husband was made on the trust that he would furnish to the father during the latter's life should he need or require it: Foster v. Willson, 68 N. H. 241, 73 Am. St. Rep. 581, 38 Atl. 1003.

**Children in General.**—Where a will bequeaths an estate to three sons, but a clause states that having full confidence in such sons and their disposition to deal fairly, justly and liberally, testator leaves it to them to make proper and suitable provision for their sisters, it shows an intention on the part of testator to charge the estate on behalf of the sisters: Cockrill v. Armstrong, 31 Ark. 580. A devise to the wife ''that she may dispose of the same as she may think best for herself and my children,'' and ''to have and use as she may think best and proper for herself and my children,'' creates

in the devisee for the benefit of herself and the children: Elliott v. Elliott, 117 Md. 380, 10 Am. St. Rep. 54, 20 N. E. 264; Kidder's Exr. v. Kidder (N. J. Ch.), 56 Atl. 154. Likewise under a devise to a wife of all real and personal estate to do as she thinks best for the children, and in case she remarries, then she is to have a child's portion, it was held that the widow was a trustee for herself and the children: Walker v. Quigg, 6 Watts, 87, 31 Am. Dec. 452. And under a devise to a wife of all the estate "to be managed by her, and that she may be enabled the better to control and manage our children, to be disposed of by her to them in that manner she may think best for their good and for her happiness," the wife holds the property in trust, not for herself or the children alone, but for both to be managed at her discretion for the benefit of herself and the children: Young v. Young, 68 N. C. 309. A residuary clause in a will stating "all the remainder of my estate I leave to my wife Elizabeth to be divided among my children as she thinks proper," vests no beneficial interest in the wife, but only a trust for the benefit of the children: Green v. Collins, 28 N. C. 139.

The decisions above set forth providing for the maintenance of children are not strictly precatory clauses, and are more properly questions as to whether they constituted an express trust, but they will serve as comparisons with those decisions in which the language is more precatory in its nature.

A trust is created where a testator devises certain land to his wife in trust for the use of his two sons, the portion to one son being defined by specified boundary lines, and the other son to have the residue, but declaring that in the division of the land it was his wish to equalize them as near as possible, and "I trust to the sense of justice to my said sons that if I have given more to the one than the other that they will do right": Hadley v. Hadley, 100 Tenn. 446, 45 S. W. 342. And a bequest to a wife, her heirs and assigns forever, "having full confidence in my said wife and hereby request that at her death she will divide equally between my sons and daughters all the proceeds of my said property, real and personal, hereby bequeathed," gives the widow a life estate with remainder in trust for the children: Knox v. Knox, 59 Wis. 172, 48 Am. Rep. 487, 18 N. W. 155.

Some of the bequests and devises in which the welfare of the children is provided for are not strictly precatory clauses, but inasmuch as they are sometimes discussed from that standpoint, we will advert to them. Thus a bequest to a wife "during her lifetime for the support of herself and my children" was held not to create a precatory trust: Billar v. Loundes, 2 Dem. Sur. 590. So, also, a bequest to a wife "in full confidence that she, in her wisdom, will make every needful provision for my children," creates no trust: Buffum v. Town of Tiverton, 16 R. I. 643, 19 Atl. 112, 7 L. R. A. 386. Neither will a clause stating, "I devise all my estate to my beloved wife feeling entire confidence that she will use it judiciously for

the benefit of herself and our children,'' create any trust: Lesesne v. Witte, 5 S. C. 450. And likewise a clause stating, ''I desire that the land and other property remaining shall continue in the possession of my wife L. during her life, believing she will make use of it for the benefit of our children as well as her own comfort. At her death I wish the property sold and an equal division made,'' was held not to create a trust: McCreary v. Burns, 17 S. C. 45. And a will giving property to the wife, ''having the fullest confidence in her capacity, judgment, discretion and affection to properly bring up, educate and provide for our children and to manage and dispose of my said property in the best manner for their interests and her own,'' creates no trust: Hunt v. Hunt, 11 Nev. 442. So, also, a bequest to the wife of real and personal estate ''in her own right in fee simple'' with a clause stating, ''I only make this request of her and only as a request, for I feel that her own kind heart and good judgment will prompt her to do so without, viz., that in the event she should marry again, she will see that the interests of our children in said property are protected,'' was held not to create a trust in favor of the children: Sale v. Thornberry, 86 Ky. 266, 5 S. W. 468. And where a will gave to the children of the testatrix an absolute estate in lands, share and share alike, and then expressed a desire that the children should live together and use the income of the property only for ten years, it was held that no trust was created by the precatory clause: Clark v. Clark, 99 Md. 356, 58 Atl. 24.

A bequest to a wife ''to her own use and benefit as she shall deem best for herself and our beloved daughter'' creates no trust in favor of the daughter: Bulfer v. Willigrod, 71 Iowa, 620, 33 N. W. 136. And a clause stating, ''I lend to my wife, during her life, all my negroes, for the purpose of raising and educating my two sons,'' then giving in appropriate terms the remainder of his estate to his wife as guardian of his sons, was held not to create a trust in behalf of the sons with respect to the negroes: Mason v. Sadler, 59 N. C. 148. A clause in a will stating, ''All the balance of my estate . . . . I direct be and remain in the possession of my wife and children for their support and the education of my children, and as my children shall arrive at age or marry, I desire that my wife shall advance to such child or children such an amount . . . . as she deems prudent, but not exceeding a distributive share of my estate, as it is my intention for my said wife to keep as much of my estate as will make her comfortable during her widowhood; but should she marry again, then she is to have no part of my estate,'' was held to create no trust: Rowland v. Rowland, 29 S. C. 54, 6 S. E. 902. And no trust was created where a testator devised his residuary estate to his wife and stated it was given to her to the end that she might provide a home where she could receive the children, and that he was confident that it would be equally divided among all of them when she no

longer needed it: Aldrich v. Aldrich, 172 Mass. 101, 51 N. E. 449. So, also, an absolute devise in fee of certain land to' testator's wife followed by a clause stating, ''It is my request and wish that she will . . . . make such provisions by will or otherwise . . . . that my son W. may share equally of the estate . . . . willed to her, with my other children,'' was held to create no trust in favor of the son: Mitchell v. Mitchell, 143 Ind. 113, 42 N. E. 465. And where testator devised certain land to his son declaring that it was his earnest request that. such son, if he should die without issue, should give the land or its value to testator's daughter, W., if living, and, if not, to her children, it was held insufficient to raise a trust: White v. Irvine, 24 Ky. Law Rep. 2458, 74 S. W. 247. And so, also, where testator devised land to his son absolutely, a subsequent clause requiring all of his children, if any should die without issue, at their death, to will the property received from his estate to testator's surviving children, or the issue of those dead, it was held not to raise a precatory trust: Igo v. Irvine, 24 Ky. Law Rep. 1165, 70 S. W. 836.

A bequest of unimproved land, which was of little benefit without the power of disposition, to the wife ''in her own name and for her own purposes, with only the condition that'' at her death she ''make an equal division of her estate to such children as shall survive her, or their representatives,'' was held not to create a trust: Sears v. Cunningham, 122 Mass. 538. And no trust was created where the residuary estate, real and personal, was devised to the wife ''to have and to hold the same to her, her heirs and assigns forever,'' with a request that she should devise the property to his children: Street v. Gordon, 41 App. Div. 439, 58 N. Y. Supp. 860. And a devise of ''all the rest and residue of my property . . . . to my dear wife . . . . believing that she will manage it judiciously, and perfectly satisfied that she will make a fair distribution of it among our children at her death,'' creates no trust: Cheston v. Cheston, 89 Md. 465, 43 Atl. 768. And where a will provided, ''After the payment of my just debts, I give, devise and bequeath all my estate, real and personal, to my wife A., to her and her heirs, forever, recommending to her to give the same to my children at such time and in such manner as she should think best,'' it was held that the widow took an absolute estate in fee simple: Gilbert v. Chapin, 19 Conn. 342. So, also, where the testator willed to his wife his real estate ''during her natural life,'' and his ''personal estate of every description . . . . absolutely, having full confidence that she will leave the surplus to be divided, at her decease, justly, among my children,'' it was held that the absolute ownership of the personal property of the testator was given to the widow with an expression of mere expectation that she will use and dispose of it discreetly as a mother: Pennock's Estate, 20 Pa. 268, 59 Am. Dec. 718. And a will which, after disposing of the residuary estate to the husband ''absolutely,'' expresses a wish that he shall arrange his affairs, that at his death ''whatever may remain'' of his property will go to the son of the testatrix, does not create a trust: Nunn v.

O'Brien, 83 Md. 198, 34 Atl. 244. And a bequest to two sons "assuming" that they will do for another son and his family "all that the truest fraternal regard may require," creates no trust: Rose v. Porter, 141 Mass. 309, 5 N. E. 641. So, also, where a bequest to an eldest daughter "to dispose of as she may deem best for my daughters," naming certain younger daughters, it was held that the eldest daughter took an absolute estate in fee simple: Hughes v. Fitzgerald (Conn.), 60 Atl. 694. And a bequest to each of four adult children with the residue to the widow, "requesting her that she will so dispose of the property at her death as to make my youngest son S. an equal legatee with the balance of my children, was also held to create no precatory trust: Spears v. Ligon, 59 Fed. 233. A devise of all testator's property to his son who had taken care of him for several years, and reciting that it was made principally in consideration of such services, but expressing a wish that the son would do what was right by his brothers and sisters with respect to the residue, if any remained after a just compensation for such services, was held to create no trust in the absence of fraud: Whitesel v. Whitesel, 23 Gratt. 904.

A devise to grandchildren in fee, but "admonished" and "charged" that the gift was made "in the hope and upon the trust that they will provide for their parents during their lives," was held to create no trust: Arnold v. Arnold, 41 S. C. 291, 19 S. E. 670.

**Step and Adopted Children.**—A will directing the income of an estate to be paid to the husband during life, "in the full confidence that he will, as he has heretofore done, continue to give and afford my children (by a former marriage) such protection, comfort and support as they or either of them may stand in need of" creates no trust: Warner v. Bates, 98 Mass. 274.

But a precatory trust is created by a clause in a will stating, "It is my wish and desire that my wife continue to provide for the care, comfort and education of T. J. M., now aged nearly five years, who has been raised as a member of my family since his infancy, and to make suitable provision for him in case of her death, providing that he continue to be a dutiful child to her, and shows himself worthy of such consideration": Murphy v. Carlin, 113 Mo. 112, 35 Am. St. Rep. 699, 20 S. W. 786.

**Grandchildren.**—Where a testator by one clause gave the residue of his estate to his daughter and "to her heirs and assigns forever," and in a subsequent clause stated "I commit my granddaughter . . . . to the charge and guardianship of my daughter S. L. C., in whose honesty, goodwill and integrity I repose the utmost confidence. I enjoin upon her to make such provision for said grandchild out of my residuary estate now in her hands, in such manner, at such times, and in such amounts as she may judge to be expedient and conducive to the welfare of said grandchild, and her own sense of justice and Christian duty shall dictate," it was held that the daughter took an absolute title to the residuary estate, and that the

provision for the granddaughter was left wholly to the discretion of the daughter: Lawrence v. Cooke, 104 N. Y. 632, 11 N. E. 144. But it was held where a testatrix devises all her estate to her son with a provision that out of his inheritance he ''is desired by his mother'' to pay, as soon as possible, $500 to his grandniece because of the kindness bestowed upon testatrix by the grandfather of said grandniece, that grandniece was entitled to the gift: In re Copeland, 38 Misc. Rep. 402, 77 N. Y. Supp. 931.

But where a will provided, ''I .... give and bequeath all my property, real and personal, to my beloved wife, only requesting her, at the close of her life, to make such disposition of the same among my children and grandchildren as shall seem to her good,'' it was held to create no trust: Foose v. Whitman, 82 N. Y. 405, 37 Am. Rep. 572. And where a bequest was made to three daughters of certain personal property to be equally divided, with a request for them to bequeath such articles to his grandchildren, the request creates no trust: In re Whelen's Estate, 175 Pa. 23, 34 Atl. 329. So, also, where a clause gave an estate to a daughter during her natural life, and at her death directed the same to be equally divided among her children, and by another clause expressed his ''will and desire'' to be that should either of the grandsons arrive at twenty-one, or granddaughters marry previous to the death of the daughter, that they should receive a portion of the estate as a loan, to have the management and receive the benefit of the same until the final distribution, and then return the same for division, it was held that it created no trust in favor of the grandchildren: Lines v. Darden, 5 Fla. 51. And likewise a devise of a farm to a son and daughter equally, ''to them, their heirs and assigns forever, hoping and believing they will do justice hereafter to my grandson D., to the amount of one-half of the said homestead farm'' was held to create no trust in favor of the grandson: Van Duyne v. Van Duyne, 14 N. J. Eq. 397.

Brothers and Sisters.—A trust is created by a devise of ''all the rest and residue of my estate, both real and personal, .... to my two brothers, A and B, whom I appoint my executors, with full confidence that they will settle my estate according to my will, and that they will dispose of such residue among our brothers and sisters and their children as they shall judge shall be most in need of the same'': Bull v. Bull, 8 Conn. 47, 20 Am. Dec. 86. Likewise a trust is created in favor of a brother by a clause in the will stating that, ''having and reposing implicit confidence in the goodness and kindness of my dear wife, I rely on her to make all needful provisions for the future wants of my brother'': Blanchard v. Chapman, 22 Ill. App. 341.

But a provision in a will requesting the sole legatee to give to the sisters of the testatrix ''any presents she may need and that my estate can afford'' is too indefinite and uncertain to create a trust in favor of the sister: Webster v. Wathen, 97 Ky. 318, 30 S. W. 663. And a residuary devise to the son, ''his heirs, and assigns forever, to

his and their own use," subject to a charge for the support of wife and the sister of testator, with a clause signifying a "desire and hope" that he would "so provide by will or otherwise that in case he shall die leaving no lawful heirs living" such residue "shall go in equal shares" to certain named relations of the testator, including brothers, sisters and cousins, was held to create no trust in favor of the relations: Hess v. Singler, 114 Mass. 56. And a clause stating, "I hereby will and bequeath unto my beloved wife A my whole estate, real and personal, after the payment of my just debts, recommending to her at the same time to make some small allowance at her convenience to each of my brothers and sisters, say to each $1,000," does not create a trust in favor of such brothers and sisters: Ellis v. Ellis' Admr., 15 Ala. 296, 50 Am. Dec. 132.

A clause stating "it is my wish that such property as my wife may have remaining undisposed of at her death that she should previously will the same to her sister, and to my brothers and sisters in equal proportions, leaving it entirely with her to make such disposition of her property by will as her judgment shall dictate, merely expressing my desire in the premises; and should she prefer to retain or dispose of the property so conveyed and devised to her, in a manner different from my wishes as herein expressed, she is at full liberty to do so, without having her right or motives for so doing called in question," does not create a trust: Toms v. Owen, 52 Fed. 417. So, also, where a will gave the residuary estate to the wife "absolutely," followed by a clause stating, "I further request that she, my said wife, shall assist any of my brothers or sisters if they should be in need, and at her decease she should divide her property among them as she may think best," it was held that no trust was created in favor of the brothers and sisters: McDuffie v. Montgomery, 128 Fed. 105.

**Nephews and Nieces.**—A trust is created by a clause stating, "I give, devise and bequeath unto my husband . . . . all my real and personal estate absolutely. . . . . I make this bequest in the full faith that my husband will properly provide for the two children of my deceased brother, Simeon, whom we have undertaken to raise and educate": Noe v. Kern, 93 Mo. 367, 3 Am. St. Rep. 544, 6 S. W. 239. And a clause stating, "I desire that the said J. W. should, at his discretion, appropriate a part of the income of my estate aforesaid, not exceeding $50 a year, to the support of the widow of M. E.," my sister's daughter, coupled with other expressions, was held to create a trust: Erickson v. Willard, 1 N. H. 217. The case of Cresap v. Cresap, 34 W. Va. 310, 12 S. E. 527, was also an instance of a trust for the maintenance of a sister and niece.

But where the testator devised his whole estate to his wife, and requested that if she should not require the whole of the estate as a support, she should will the remainder at her death to the children of testator's brother, it was held that no precatory trust was created: Bryan v. Milby (Del.), 24 Atl. 333.

And no trust is created by a clause stating, "And it is my wish and expectation that when my wife J. shall make her will disposing of the property left her by me that she will generously remember the children of my deceased brother W. and such others as she may choose: Russell v. United States Trust Co., 127 Fed. 445. The case of In re Whitcomb's Estate, 86 Cal. 265, 24 Pac. 1024, referred, in addition to a request for a disposition to a college, to a disposition in favor of a grandnephew.

"Relations," "Near Relatives," "Blood Relations," and "Kinsfolk."—No trust was held to be created by a will which, after giving the estate to the wife for life, recited that after providing for her own wants and comforts she should, in her discretion, "give to such of my relations such aid or assistance as my wife may, of her own will, think proper and just": Corby v. Corby, 85 Mo. 371.

But a trust was held to be created where the testator gave the residue of his estate to the wife "in good faith, believing that she will make a will and thereby distribute so much of the last-named legacy among my near relatives as she may not use for comfortable maintenance; and it is my will that my said wife shall make such distribution": Cox v. Wills, 49 N. J. Eq. 130, 22 Atl. 794. Though a trust is not created by a clause stating, "I expect and desire that my said wife will not dispose of any of said estate by will in such a way that the whole that might remain at her death shall go out of my family and blood relation": Matter of Gardner, 140 N. Y. 122, 35 N. E. 439.

A provision in an olographic will stating, "I have spoken of all my property to be divided in this will . . . . without making any outside bequests. I want to give to my wife an executrix's power to give out of my estate, before division, as much as $15,000 of bequests to my kinsfolk: Say to W. $5,000 or $10,000, in her discretion, and the balance to some one else who may be in need," was held to create a trust to the extent of $5,000; Ensley v. Ensley, 105 Tenn. 107, 58 S. W. 288.

Brothers and Sisters in Law.—A bequest to a wife of $10,000, "which I desire her to use for the benefit of her brothers and sister, according to her best judgment and discretion, which is to be paid after the discharge of the debts," was held to create no trust: Jacob v. Macon, 20 La. Ann. 162. See, also, Post v. Moore, 181 N. Y. 15, 106 Am. St. Rep. 495, 73 N. E. 482.

In Tom v. Owen, 52 Fed. 417, the husband had conveyed all his property to his wife, merely reserving a life estate. Subsequently he made a will stating that he wished to avoid all questions that might arise about the previous deed. He devised all the estate to her, and provided that his wife "should make free use of all the property so conveyed and devised to her for her own use, or for charitable purposes, knowing, that in case any of my immediate relations, or her sister, should, by any misfortune, or otherwise, need any assistance, she would generously share with them, and therefore

I feel no hesitation in leaving with my wife the power to carry out the wishes as expressed herein,'' the court held that no trust was created.

**Poor or Needy Relations.**—In some of the clauses which we have adverted to, it will be observed that the bequest was made with a request that provision be made for such of the testator's relatives, sometimes naming the particular degree of relationship, as should be in need, or require assistance and similar phrases. For instance of such phrases, see Bull v. Bull, 8 Conn. 47, 20 Am. Dec. 86; Blanchard v. Chapman, 22 Ill. App. 341; Webster v. Wathen, 97 Ky. 318, 30 S. W. 663; Durant v. Smith, 159 Mass. 229, 34 N. E. 190; Willets v. Willets, 35 Hun, 401; Tom v. Owen, 52 Fed. 417; McDuffie v. Montgomery, 128 Fed. 105.

**Servants and Strangers.**—Where a will, after giving the estate to the wife, provided: ''It is my desire that it may suit her pleasure, and if so, I request, but without intending to create a trust therefor, that she allow and pay Ann Tarco, a mulatto, who has been for some time in our service, $15 per month for life, for her support.'' The will also provided that in case the wife did not survive him, he gave the estate to an adopted daughter, charged with the payment of $15 to said mulatto. The wife survived him, and it was held that no precatory trust was created: Ender's Exr. v. Tarco, 89 Ky. 17, 11 S. W. 818.

But in Chambers v. Davis, Phil. Eq. (62 N. C.) 152, 93 Am. Dec. 605, a trust was held to have been created where the testator recommended in his will a certain person to the humanity of his executors, and also in the will specified a sum to be set apart, the interest of which was to be for the support of the person so recommended, who was a slave, during his life.

**Precatory Terms Relative to Charitable, Educational, or Other Public Uses.**—A bequest to executors ''in their own right, trusting, nevertheless, and believing that, under a proper sense of their obligation to their own consciences, and their accountability to God, they will pay over and contribute the same to charitable objects,'' creates no trust: Frierson v. General Assembly of Presbyterian Churches, 7 Heisk. 683. So, also, a statement that testator relies upon the legatee to dispose of money for the benefit of such charitable and benevolent and educational purposes as legatee shall judge will most promote the comfort and improve the condition of the poor, or of testator's descendants, if they become poor and needy, creates no trust: Willets v. Willets, 35 Hun, 401.

The case of In re Ingersoll, 59 Hun, 571, 14 N. Y. Supp. 22, was an instance of a bequest to an executor for church purposes, the testator stating what he desired, but the court held that no trust was created. And in Eberhardt v. Perolin, 49 N. J. Eq. 570, 25 Atl. 510, the precatory clause construed also had a recommendation respecting an

increase of a fund toward a church, though the case seems to have been fought on other lines.

And where a will provided, ''I give to my nephew . . . . and to his son all my interest, either real, personal or mixed, in the Jimeno Ranch. . . . . And I recommend to my said nephew to leave his portion thereof after his own death, and the death of his wife'' to his son and his children, or descendants, and, in default of such, to Harvard College, the court held that no trust was created in favor of the college: In re Whitcomb's Estate, 86 Cal. 265, 24 Pac. 1028. In the case of Succession of Hutchinson, 112 La. 656, 36 South. 639, the bequest was to a university for the sole benefit of its medical department. The will contained numerous recommendations, but they were held not to amount to conditions. A somewhat similar bequest was made in Pratt v. Trustees, 88 Md. 610, 42 Atl. 51, where the residuary estate was given to an insane asylum. One clause of the will stated that, while testator did not wish to alter the management of the asylum, it was his ''wish and will'' that the estate given be used to complete the present buildings, etc. The court held that no trust was created.

A bequest to a city ''with the request that the same be expended, if such is sanctioned by law, in the erection of a drinking fountain in the city,'' does not create a precatory trust: In re Crane's Will, 159 N. Y. 557, 54 N. E. 1089. So, also, where, in making a bequest for the erection of a soldiers' and sailors' monument, the testator stated that his ''desire'' was that it should be erected on a particular triangular piece of ground in the town, it was held that the desire was not imperative: In re Ogden, 25 R. I. 373, 55 Atl. 933.

A bequest of a certain sum to two legatees ''as their absolute property,'' followed by clause ''I request said [legatees] to use said fund thus given to further what is called the 'Woman's Rights Cause'; but neither of them is under any legal responsibility to anyone, or any court, to do so,'' creates no trust: Bacon v. Ransom, 139 Mass. 117, 29 N. E. 473.

And a bequest to a publication society of a church organization, charging the society with the duty of using the gift in counteracting ''the unscriptural, unreasonable and pernicious doctrine of the immortality of the soul'' was held not to create a trust: Pierce v. Phelps, 75 Conn. 83, 52 Atl. 612.